Mr. J ustice Field
delivered the opinion of the court:
By the Treaty of Guadalupe Hidalgo, made on the 2d of February, 1848, between the United States and Mexico, the United States exonerated Mexico from all demands of their citizens which had previously arisen, and had not been decided against • that government, and engaged to satisfy them to an amount not exceeding three and one-quarter million dollars. They also stipulated for the establishment of a board of commissioners to ascertain the validity and amount of the claims, and provided that its awards should be final. (9 Stat. L., p. 933,. Arts. XIV and XV of the treaty.)
In execution of this stipulation, Congress, on the 3d of March, 1849, passed an act creating a board of commissioners to examine the claims, and provided for the payment of its awards, or- *46 ¡a proportional part thereof, from the amount designated in the treaty. The act required the board to terminate its business within two years from the day of its organization. (Ibid., 393.)
To this board Alexander J. Atocha, a naturalized citizen of the United States, presented a claim against the government •of Mexico for losses sustained by reason of his expulsion from that country in 1845. In the prosecution of his claim evidence was taken and laid before the board, but whether it was acted upon, and what proceedings were subsequently taken, we are not informed by the record. For aught that appears the claim may not have been prosecuted to a final determination; it may have fallen from the expiration of the board, or it may have been rejected on its merits. It is immaterial, so far as the present inquiry is concerned, what its fate was before the board. If rejected, the United States were the only party to insist upon the finality of the determination. Mexico was released from the claim, and it did not concern her what consideration the United States might choose to give to it, so long as other claimants against her were not in consequence denied payment of their demands, and there is no pretense that such was the case. On the contrary, a balance remained of the amount designated in the treaty after the satisfaction of the awards made. And on the 14th of February, 1865, Congress passed a special act for the relief of Atocha, and by it directed the Court of Claims to exaiiiine into his claim, and provided that if the court was of opinion that the claim -was a just one against Mexico -when the treaty of 1848 was ratified, and was embraced by that treaty, it should “fix and determine” its amount, and declared that the loss or damage sustained by him, thus adjudicated and determined, should be paid out of any money iii the Treasury not otherwise appropriated, subject only to the condition that the amount did not exceed the unapplied balance of the sum designated in the treaty. (13 Btat. L., p. 595.)
The claim was accordingly brought, in pursuance of the act, before the Court of Claims for examination and determination. To aid in its examination Congress passed, on the 5th of April, 1870, an amendatory act authorizing Atocha in the prosecution of his claim, and the government in defending against it, to use such portions of the eiddence taken in pursuance of the rules and regulations of the commission established under the *47 treaty as consisted of tire testimony of persons since deceased, and declared that the court should give to .this evidence, so far as its subject-matter was competent, such, weight as, in the judgment of the court, under all the circumstances, it ought to have. (16 Ibid., p. 633.)
On the 26th of May, 1873, the Court of Claims rendered its decision, reciting that, having examined into the claim in pursuance of the act of Congress, it announced that it was of opinion that the claim was a just one against Mexico when the treaty of 1848 was ratified and was embraced by that treaty, and “fixed and determined” the amount of the loss and damage sustained by Atocha by reason of his expulsion from that country at the sum of $207,852.60, and declared that this sum would be satisfied and discharged by the payment by the United States to Eliza J..Atocha, who is the administra-trix of the estate of the original claimant, of the balance remaining unapplied of the sum designated in the treaty, which was a few hundred dollars less than the amount awarded.
From this decision the Attorney-General applied for an appeal on behalf of the United States. The application was denied, the Court of Claims being of opinion that no appeal was by law allowed in the case. On motion of the Attorney-General, an alternative writ of mandamus was directed to the judges of that court to allow the appeal. In their return the judges refer to the special act under which the Court of Claims heard the case, and place their refusal on the ground, substantially, that the court acted not under any general grant of jurisdiction, but under the limited authority prescribed by that act; that it was the intention of Congress that the court should proceed, not as a court trying an action against the United States, but as a commission similar to that provided by the treaty; that no claim against the United States was submitted to its adjudication; that in the absence of any provision in the special act for an appeal none would lie, unless some other provision of law authorized it; and that the provisions contained in the general Acts of March 3, 1863, and June 25, 1868, in relation to appeals from judgments of the Court of Claims, did not apply, as the first act only gave an appeal from judgments on claims against the United States, and the second act from judgments adverse to the United States.
*48 Upon this return, as upon a demurrer to its sufficiency, the Attorney-General asks for a peremptory mandamus.
The question for determination is, whether, under the acts of Congress investing the Court of Claims with general jurisdiction to hear and determine claims, an appeal lies from its decision in this case. If an appeal is authorized, it must be by the provisions of the Act of March 3,1863, amending the act establishing the Court of Claims, or of the Act of June 25, 1868, providing for appeals from its judgments.
The original Act of February 24,1855, establishing the Court of Claims, gave it jurisdiction to hear and determine all claims founded upon any law of Congress, or upon any regulation of an Executive Department, or upon any contract, express or implied, with the Government of the United States, which might be suggested to it by petition, and all claims which might be referred to the court by either House of Congress; but it did not authorize any appeal from the decisions of the court. It required the court to report to Congress the cases upon which it had finally acted and the material facts established by the evidence in each, with its opinion and the reasons upon which the opinion was founded. It was not until the passage of the Act of March 3,1863, that an appeal from its decisions was allowed. That act materially amended the original act, added two more judges, gave the court jurisdiction over set-offs and counter-claims, and authorized an appeal to the Supreme Court in all cases where the amount in controversy exceeded $3,000, and without reference to the amount where the case involved a constitutional question, or the judgment or decree affected a class of cases, or furnished a precedent for the future action of an Executive Department. But the act at the same time declared that the jurisdiction of the court should not extend to or include any claim against the Government not pending in the court on the 1st of December, 1862, growing out of or dependent on any treaty stipulation entered into with foreign nations or the Indian tribes. All the-cases of which the court could subsequently take cognizance, by either the original or amendatory act, were cases arising out of contracts or transactions between the Government or its officers, and claimants ; and in their decision the court was to be governed by those established rules of evidence which determine controversies between litigants in the ordinary tribunals of the country. *49 Those acts have since then applied only to claims made directly against the United States, and for the payment of which they were primarily liable, if liable at all, and not to claims against other governments, the payment of which the United States had assumed or might assume by treaty.
The Act of June 25,1868, while allowing appeals on behalf of the United States from all final judgments of the Oonrt of Claims adverse to the United States, did not change the character of the claims of which that court could previously take cognizance. Claims under treaty stipulations are not brought within it, and when jurisdiction over such claims is conferred by special act, the authority of that court to hear and determine them, and of this court to review its action, is limited and controlled by the provisions of that act. In the case of Meade v. United States, the special act of Congress was passed to remove the restriction of the ninth section of the Act of 1863, and his claim was referred to the Court of Claims “ for adjudication thereof, pursuant to authority conferred upon said court by any existing law to examine and decide claims against the United States, referred to it by Congress.” (14 Stat. L., p. 661.) His claim was thus placed under the jurisdiction of the court equally as though the ninth section were not in existence.
In the present case, no such general reference was made of the claim of Atocha, nor was any such extended authority over it conferred. The court was directed to make a specific examination into the justice of the claim against Mexico, and whether it was embraced within the treaty; and if the court was of opinion that the claim was a just one and was embraced within the treaty, it was required “ to fix and determine” its amount, and when so determined, the act declares .that the amount shall be paid. The matter was referred to the court to ascertain a particular fact to guide the Government in the execution of its treaty stipulations. The court has acted upon the matter, and as no mode is provided for review of its action, it must be taken and regarded as final.
Our judgment is, that the return of the judges of the Court of Claims to the alternative writ is sufficient, and a peremptory mandamus is denied.