William BELK, William A. Gallegos, Duane Gillette, Alan Golacinski, Leland Holland, Charles Jones, Jr., Malcolm Kalp, John D. McKeel, Paul Needham, David Roeder, Susan Roeder, William B. Royer, Jr., Charles Wesley Scott, Elizabeth Scott, and Donald A. Sharer, Plaintiffs-Appellants,

v.

The UNITED STATES, Defendant-Appellee.

No. 87–1631.

United States Court of Appeals, Federal Circuit.

Sept. 22, 1988.

James H. Davis, Law Offices of James H. Davis, Los Angeles, Cal., argued for plaintiffs-appellants.

Terrance S. Hartman, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were Richard K. Willard, Asst. Atty. Gen., and David M. Cohen, Director. Also on the brief was Lisa Grosh, Dept. of State, of counsel.

Before FRIEDMAN and NEWMAN, Circuit Judges, and BENNETT, Senior Circuit Judge.

FRIEDMAN, Circuit Judge.

This is an appeal from a judgment of the United States Claims Court granting summary judgment dismissing a complaint by former hostages held in the United States Embassy in Tehran, Iran. The appellants seek just compensation for the alleged taking by the United States of their property right to sue Iran for injuries sustained while held hostage—a right the United States extinguished in connection with obtaining the release of the hostages. The Claims Court dismissed the complaint on alternative grounds: (1) that the government's action did not constitute a taking, and (2) that the complaint would require the resolution of political questions, which the court could not do. *Belk v. United States*, 12 Cl.Ct. 732 (1987). We affirm.

I

The appellants are 15 United States citizens, 13 of whom were held hostage in the United States Embassy in Tehran from November 4, 1979 to January 20, 1981, and the wives of two of the hostages. The United States had attempted unsuccessfully to obtain the release of the hostages in various ways. *See Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 837 & n. 1 (D.C.Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984). The hostages finally were released by agreements arranged through the government of Algeria.

The United States signed these agreements (commonly referred to as the Algiers Accords) on January 19, 1981. On the same day President Carter issued a series of Executive orders implementing the terms of the agreements, Exec. Orders Nos. 12276–12285, 3 C.F.R. 104–18 (1982), *reprinted in* 50 U.S.C. § 1701 at 150–55 (1982), and on February 24, 1981, President Reagan issued an Executive order "ratifying" the January 19th Executive orders. Exec. Order No. 12294, 3 C.F.R. 139–40 (1982), *reprinted in* 50 U.S.C. § 1701 at 155 (1982). The Supreme Court upheld the Executive orders in *Dames & Moore v. Regan*, 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981).

The relevant provision of the Algiers Accords prohibits United States nationals from prosecuting claims related to the seizure of the hostages, their detention, and injuries to them or their properties that arose out of events that occurred before the date of the Accords. *Belk*, 12 Cl.Ct. at 733. The day after the United States signed the Algiers Accords, the hostages were released.

Following the appellants' release, they filed the present suit against the United States in the Claims Court. The complaint alleged that the appellants had "valid and valuable causes of action against the Islamic Republic of Iran, its officials, agents, instruments, and employees" resulting from the mistreatment the appellants suffered while being held hostage; that before the Accords were executed, the appellants "were entitled to prosecute their valid and valuable causes of action and to collect upon their claims" in the "federal district courts of the United States" and "in Iran itself"; and that by executing the Accords the United States "barred plaintiffs from prosecuting any and all of their existing and potential causes of action against Iran in any court or forum anywhere in the

world" and thereby "extinguished plaintiffs' valid causes of action."

According to the complaint, these causes of action "constituted valuable private property rights," which the United States has "taken for public use without just compensation." The complaint asserted that the appellants are entitled to recover from the United States just compensation "equivalent to the damages they could have recovered from Iran had defendant not extinguished their claims."

The United States moved for summary judgment. The Claims Court granted the motion, and dismissed the complaint. The court held that there had been no taking because "[w]here a governmental action is intended to primarily benefit particular individuals, a taking has not occurred, even though there is an incidental benefit to the public." 12 Cl.Ct. at 734. Based on the undisputed facts, the court ruled that the plaintiffs were the principal beneficiaries of the President's actions, even though there was an incidental benefit to all Americans. The court noted that " 'the president's power to espouse and settle claims of our nationals against foreign governments is of ancient origin and constitutes a well-established aspect of international law.' " *Id.* (quoting *Shanghai Power Co. v. United States*, 4 Cl.Ct. 237, 246 (1983), *aff'd mem.*, 765 F.2d 159 (Fed.Cir.), *cert. denied*, 474 U.S. 909, 106 S.Ct. 279, 88 L.Ed.2d 243 (1985)). The court concluded that the facts "do not require in the interests of 'justice and fairness' that plaintiffs' [sic] receive compensation from the United States for the settlement of their claims against Iran." 12 Cl.Ct. at 734.

Alternatively, the court held that the complaint raised a political question because "[t]his case involves a policy decision made by the President during a crisis situation." *Id.* at 736. The court noted that " '[a] judicial inquiry into whether the President could have extracted a more generous settlement from another country would seriously interfere with his ability to carry on diplomatic relations.' " *Id.* (quoting *Shanghai Power*, 4 Cl.Ct. at 248). The

court concluded that the President's extinguishment of the plaintiffs' claims could not ground a cause of action for a taking "because such an action is not susceptible to judicial review." 12 Cl.Ct. at 736.

## II

■ Although the appellants state in their brief that "[t]he facts in this case are essentially undisputed," they nevertheless argue that there were disputed issues of material fact that precluded summary judgment. They fail to point to any such facts, however. The alleged "disputed material facts" to which they refer are questions of law relating to the validity of the Algiers Accords. The Claims Court properly decided the case on summary judgment.

## III

■ On the undisputed facts, the Claims Court correctly held that the appellants have not stated a valid or judicially cognizable claim for a taking of private property for a public use, for which the United States is required to pay just compensation.

A. Assuming without deciding that the appellants' claims against Iran constituted "property" under the Fifth Amendment's takings clause, the extinguishment of those claims pursuant to the Algiers Accords did not constitute a taking of that property.

The Fifth Amendment states: "nor shall private property be taken for public use without just compensation." The Supreme Court "has been unable to develop any 'set formula' for determining when ... economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons." *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). Whether there has been a taking "depends largely 'upon the particular circumstances [in that] case.' " *Id.* (quoting *United States v. Central Eureka Mining Co.*, 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d

1228 (1958)). In each case the court must weigh all the relevant factors and decide whether compensation is required in the interest of "justice and fairness." *See Deltona Corp. v. United States*, 657 F.2d 1184, 1191, 228 Ct.Cl. 476, 488–89 (1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982).

As the Claims Court noted in this case, the relevant factors include

"the degree to which the property owner's rights were impaired, the extent to which the property owner is an incidental beneficiary of the governmental action, the importance of the public interest to be served, whether the exercise of governmental power can be characterized as novel and unexpected or falling within traditional boundaries, and whether the action substituted any rights or remedies for those that it destroyed."

*Belk*, 12 Cl.Ct. at 733 (quoting *Shanghai Power*, 4 Cl.Ct. at 242–43). These factors are an explication, reflecting the unusual facts of this case, of our prior statement that the principal factors in a takings analysis are "the character of the government action, its economic impact, and its interference with reasonable investment expectations." *United States v. (1) 1979 Cadillac Coupe de Ville*, 833 F.2d 994, 1000 (Fed.Cir.1987).

"A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124, 98 S.Ct. at 2659 (citation omitted). Here there was no physical invasion of property, but only the prohibition on the assertion by the appellants of their alleged damage claims against Iran. Although the Algiers Accords did not provide any alternative forum in which the hostages could assert their claims, that fact is not sufficient to establish a taking. *Cf. Dames & Moore*, 453 U.S. at 687, 101 S.Ct. at 2990.

The President's action in implementing the Algiers Accords was primarily designed to benefit the hostages. It followed their imprisonment for 14 months and various unsuccessful attempts by the United States to obtain their release. The day after the Accords were signed, the hostages were released. "[W]here, as here, the private party is the particular intended beneficiary of the governmental activity, 'fairness and justice' do not require that losses which may result from that activity 'be borne by the public as a whole,' even though the activity may also be intended incidentally to benefit the public." *National Bd. of Young Men's Christian Ass'ns v. United States*, 395 U.S. 85, 92, 89 S.Ct. 1511, 1515, 23 L.Ed.2d 117 (1969) (citations omitted).

Nor can it be said that the President's action in barring the assertion of the appellants' claims against Iran as a condition of the release of the hostages was novel and unexpected. "[T]he United States has repeatedly exercised its sovereign authority to settle the claims of its nationals against foreign countries.... by executive agreement[s].... [u]nder [which] the President has agreed to renounce or extinguish claims of United States nationals against foreign governments in return for lump-sum payments or the establishment of arbitration procedures." *Dames & Moore*, 453 U.S. at 679, 101 S.Ct. at 2986. The President's authority to extinguish the kind of claims against Iran that the appellants seek to assert is no more novel, done as it was "in return for" the hostages' freedom and perhaps their very lives. As the Claims Court pointed out in its ruling from the bench following argument in which it granted summary judgment for the government: "there's no doubt that if the question was put by the President in some hypothetical world that you want to be released from Iran as of today or would you want to go on indefinitely preserving your right to sue Iran at some later date, there wouldn't have been a millionth of a second pause on the part of the hostages or their spouses, as to which way to go on that."

The extinguishment of the appellants' claims against Iran cannot be said to have "interfered with distinct investment-backed expectations," which is one of the factors the courts consider in determining whether there has been a taking. *Penn Central*, 438 U.S. at 124, 98 S.Ct. at 2659. The appellants argue that "the mere obtaining of personal freedom is not sufficient compensation for the extinguishment of other rights." The question, however, is whether the President's action in extinguishing the appellants' right to sue Iran in exchange for their freedom, constituted a taking of property for which the United States is required to pay just compensation. We agree with the Claims Court that on the undisputed facts of this case the appellants have not stated a cause of action for a taking based on the President's implementing the Algiers Accords.

■ B. We also agree with the Claims Court's alternative holding that adjudication of the appellants' taking claim would involve the court in the resolution of a political question. The President is "the sole organ of the federal government in the field of international relations." *United States v. Curtiss–Wright Export Corp.*, 299 U.S. 304, 320, 57 S.Ct. 216, 221, 81 L.Ed. 255 (1936). Issues involving foreign relations frequently present questions not meet for judicial determination. In *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962), the Court explained:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Most, if not all, of those concerns are present in this case. It involves a policy decision made by the President during a time of crisis. The appellants apparently contend that the President should not have entered into the Algiers Accords because he could have obtained better terms, and that the Accords themselves were illegal because the President was coerced into agreeing to them. The determination whether and upon what terms to settle the dispute with Iran over its holding of the hostages and obtain their release, necessarily was for the President to make in his foreign relations role. That determination was "of a kind clearly for nonjudicial discretion," and there are no "judicially discoverable and manageable standards" for reviewing such a Presidential decision. A judicial inquiry into whether the President could have extracted a more favorable settlement would seriously interfere with the President's ability to conduct foreign relations. *Cf. Curtiss–Wright*, 299 U.S. 304, 57 S.Ct. 216; *Shanghai Power*, 4 Cl.Ct. 237.

C. Although the appellants underwent an agonizing experience, they have not stated a valid claim for a taking by the United States of their causes of action against Iran that, as they frame their case, is appropriate for judicial resolution. If there is to be any compensation of the appellants for the mistreatment and suffering they underwent during their captivity as hostages in Iran, it must be provided by one of the other "coordinate branches of government."

## CONCLUSION

The judgment of the United States Claims Court granting summary judgment dismissing the complaint is

AFFIRMED.

BENNETT, Senior Circuit Judge, concurring.

The cogent reasoning of Judge Friedman's opinion is without fault and the result is proper as to lack of merit in the alleged taking. On the alternative holding of the Claims Court that the claim, in any event, involves a political or policy question of foreign policy and thus is inappropriate for judicial resolution under the doctrine of separation of powers, we all agree this is so.

There is, however, another significant ground to deny relief although not briefed to, or determined by, the Claims Court. The parties are in clear agreement that whatever rights plaintiffs have to a taking claim under the Fifth Amendment grows out of and is dependent upon the Algiers Accords, the international Executive agreement in this case. It is provided by 28 U.S.C. § 1502 (1982), as follows:

> Except as otherwise provided by Act of Congress, the United States Claims Court shall not have jurisdiction of any claim against the United States growing out of or dependent upon any treaty entered into with foreign nations.

For the purposes of section 1502 the term treaty includes international Executive agreements. The Court of Claims stated it in this way in *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 903 n. 17 (1976):

> this court has in the past equated international executive agreements with treaties for purposes of Section 1502. (Citation omitted.) The reason for this equation is that the fundamental separation-of-powers policy underlying § 1502, i.e., to avoid undue judicial interference (*e.g.*, by construction of particular treaty terms and provisions) with the Executive Branch's conduct of foreign relations, is equally applicable to both forms of international compact. *See Great Western Ins. Co. v. United States*, 112 U.S. 193, 200, 5 S.Ct. 99, 103, 28 L.Ed. 687 (1884).

Court of Claims judgments are binding precedents here. *South Corp. v. United States*, 690 F.2d 1368, 1370–71, 1 Fed.Cir. (T) 1, 1, 215 USPQ 657, 657 (Fed.Cir.1982). It is our obligation at all times to consider not only this court's jurisdiction but that of the tribunal from which an appeal is taken. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed. Cir.1983). Further, the parties cannot by their consent confer jurisdiction on a court. *General Dynamics Corp. v. United States*, 214 Ct.Cl. 607, 558 F.2d 985, 990 (1977). I conclude, therefore, there was no jurisdiction in the Claims Court to consider appellants' claims. Precedent settles that unless Congress or a contract implied in fact entirely outside a treaty or international Executive agreement permits judicial relief, the Claims Court or its predecessor, the Court of Claims, has no jurisdiction to grant relief because of section 1502. *Cf. Weinberger v. Rossi*, 456 U.S. 25, 102 S.Ct. 1510, 71 L.Ed.2d 715 (1982); *Societe Anonyme Des Ateliers Brillie Freres v. United States*, 160 Ct.Cl. 192 (1963).

I would therefore hold that both the jurisdictional bars of a political question and section 1502 precluded the Claims Court from considering this case on the merits and that failure to state a constitutional taking claim under the Fifth Amendment prohibited any result other than summary judgment for the government.