### JEFFERSON CONSTRUCTION COMPANY
### v.
### The UNITED STATES.
### No. 81–65.

United States Court of Claims.
April 19, 1968.

---

Philip M. Cronin, Boston, Mass., attorney of record, for plaintiff. Withington, Cross, Park & Groden, Boston, Mass., of counsel.

Edward J. Friedlander, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

LARAMORE, Judge.[*]

Plaintiff, Jefferson Construction Company, hereinafter referred to as Jefferson, was awarded a contract for $963,714 by the General Services Administration to construct two reinforced concrete buildings, a retaining wall and a pumphouse at the Northeast Shellfish Sanitation Research Center at Narragansett, Rhode Island. Jefferson alleges that by supplying plans which it knew, or should have known, were defective, the government breached its implied contractual obligation to furnish plans, specifications and rock boring data which, if complied with, would result in satisfactory performance. Plaintiff's expected performance time and completion schedule were delayed when additional concrete and steel work were required to complete the contract under unanticipated weather conditions. Jefferson claims delay damages for breach of contract in addition to the equitable adjustment received from the contracting officer.

Originally plaintiff alleged four causes of action. Counts two and three[1] of the original petition were waived before trial. Plaintiff did not file exceptions to the trial commissioner's report on Count four and at oral argument waived that Count. We agree with the trial commissioner that the General Services Administration Board of Contract Appeals' decision (on Count four) is supported by substantial evidence. We have incorporated that part of the report, as modified, and deny any recovery for Count four.

Count one, the only claim now before us, alleges that Jefferson was unreasonably delayed both by the government's failure to furnish adequate plans and borings and by its failure to correct the plans within a reasonable time after the inadequacies became evident. We conclude that plaintiff has not proved that defendant breached the contract. It has received all of the administrative relief to which it is entitled, and we dismiss the petition.

### I.

Prior to the issuance of a request for bids, government personnel took 15 core boring test samples of the subsoil at the excavation site in the area immediately adjacent to the locale of the foundation pads. Jefferson's bid and estimated excavation costs were based on government-furnished plans which indicated that foundation pad excavation would terminate at a depth where the core boring drill had shown "refusal," i. e., the drill would not penetrate the subsoil beyond the point of refusal. No representative of Jefferson ever examined

---

[*] We are indebted to Trial Commissioner William E. Day for his opinion, findings of fact and recommended conclusions of law submitted under the order of reference and Rule 57(a).

1. Count two alleged that the GSA Board had erred as a matter of law in dismissing the delay-damages claim for lack of jurisdiction. Count three alleged that defendant's failure to pay plaintiff for the extra rock excavation and removal was a breach of contract.

the core boring samples which the government had made available.

Jefferson acknowledged its July 19, 1962 receipt of the government's July 17 notice to proceed and began work on the project the next day, July 20. Work was to have been completed within 360 days from the date of the notice to proceed. Because of the various delays encountered, substantial compliance did not occur until February 6, 1964, and the contract was not completed until June 16, 1964. Plaintiff claims to be entitled to compensation for the overhead costs incurred during delay.

Problems began at the first of the 36 required foundation pad (footing) excavations. Jefferson excavated to the depth indicated on the plans as the "refusal" point but encountered clay rather than the rock ledge which it had concluded was the basis for the "refusal." It had anticipated placing the foundation pads on that rock.

Jefferson notified the government resident engineer on the following day (August 14, 1962). After an on-site inspection the government structural engineer directed Jefferson to continue its excavation until an appropriate base for the footing was reached.[2] Excavation at 34 of the 36 footing sites terminated at a depth other than the refusal point noted on the plans. Thirty-two footings were at a greater depth, with an average overcut of 4.3 feet and a maximum of 10.6 feet.

The absence of a known excavation depth disrupted plaintiff's planned progress schedule, required additional manpower, special equipment and material, and prevented construction of wood forms (into which the concrete is poured) until after excavation for each footing was completed. Originally plaintiff claimed $46,229 as compensation for a 90-day delay, but its claim is now limited to $38,362.74 as compensation for a 70-day delay.[3]

Plaintiff presented to the contracting officer its claim for actual costs and indirect costs incurred as a result of the delay. In response, the contracting officer offered $17,000 as an equitable adjustment for the additional costs expended during performance. Plaintiff accepted that payment but expressly reserved its right to compensation for the delay damages. The final decision of the contracting officer awarded plaintiff the $17,000 and granted a 21-day extension of time (plaintiff had requested 90 days). Jefferson accepted the $17,000 but sought review of the "equitable adjustment" from the GSA Board of Contract Appeals.

On February 5, 1965, the GSABCA upheld the $17,000 award but dismissed that part of the claim which requested damages for the delay. It concluded that plaintiff's unreasonable delay claim was not covered by the contract and, therefore, as a breach of contract claim it was not within its jurisdiction. By a

---

2. The directive to continue excavation was made pursuant to the Changed Conditions clause of the contract which provides:

"4. CHANGED CONDITIONS

"The Contractor shall promptly, and before such conditions are disturbed, notify the Contracting Officer in writing of: (a) subsurface or latent physical conditions at the site differing materially from those indicated in this contract, or (b) unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in this contract. The Contracting Officer shall promptly investigate the conditions, and if he finds that such conditions do so

materially differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performance of this contract, an equitable adjustment shall be made and the contract modified in writing accordingly. * * * If the parties fail to agree upon the adjustment to be made, the dispute shall be determined as provided in Clause 6 of these General Provisions."

3. The trial commissioner has found (finding 28) that plaintiff did not begin to excavate for the footings until August 13. The 20 days between the date of the notice to proceed, July 18, and August 13, were not related to the additional excavation. Plaintiff was delayed for a 70-day period.

pre-trial agreement the parties agreed to try Count one *de novo* in this court.

 Both parties agree that plaintiff exhausted its available administrative remedies when the GSABCA refused to consider the claim for lack of jurisdiction. The Board recognized the distinction between claims which, by virtue of an agreement by the parties (as embodied in their contract), are determinable by an administrative agency, and those claims which, because they have not been made subject to resolution under the contract, remain "pure" breach of contract claims to be tried before the court. See: The Len Company v. United States, 385 F.2d 438, 442, 181 Ct.Cl. 29 (October, 1967) (slip op. 5); J. G. Watts Construction Co. v. United States, 355 F.2d 573, 174 Ct.Cl. 1 (1966); Cf., Ekco Products Co. v. United States, 312 F.2d 768, 160 Ct.Cl. 75 (1963); New York Shipbuilding Corp. v. United States, 385 F.2d 427, 180 Ct.Cl. 446 (1967). A true breach of contract claim which, by definition is outside the scope of the contract, is subject neither to equitable adjustment under the contract nor to administrative review or resolution. United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966); United States v. Utah Construction & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); and L. L. Hall Construction Co. v. United States, 379 F.2d 559, 177 Ct.Cl. 870 (1966). Merely recasting a dispute which has been made subject to adjustment under the contract into breach of contract language and theory does not remove the disputed claim from the administrative determination required by the contract or from the remedies therein provided. United States v. Utah Construction & Mining Co., supra; Morrison-Knudsen Co. v. United States, 345 F.2d 535, 170 Ct.Cl. 712 (1965).

 It is clear, however, that the parties may, by a waiver agreement, submit a controversy for initial resolution by the court and thereby modify the contractual agreement to proceed before an administrative board. See: Luria Brothers & Co. v. United States, 369 F.2d 701, 177 Ct.Cl. 676 (1966), (369 F.2d at 704, 177 Ct.Cl. at 681 (footnote 4)); Stein Bros. Mfg. Co. v. United States, 337 F.2d 861, 162 Ct.Cl. 802 (1963), partially overruled on other grounds, United States v. Anthony Grace & Sons, Inc., supra; C. J. Langenfelder & Son, Inc. v. United States, 384 F.2d 1005, 181 Ct.Cl. 407 (November, 1967); Bennett v. United States, 371 F.2d 859, 178 Ct.Cl. 61 (1967). That choice, however, cannot result in the type of duplicative litigation specifically prohibited by United States v. Utah Construction & Mining Co., supra, whereby a dispute is tried before the administrative agency as a claim subject to the contract and then retried before the court as a dispute giving rise to a breach claim. Where, as in this case, the Board itself has denied jurisdiction over a claim and the parties have agreed to a trial *de novo*, the court will decide whether or not the particular dispute is or is not within the scope of the contract and, in either case, give the appropriate relief to which the contractor is entitled.

 The finality of relevant findings of fact, supported by sufficient evidence, which are made by an administrative board in disposing of a claim over which it has the power to grant relief, cannot be denuded by a trial *de novo* in this court on a breach claim which is dependent upon the same underlying facts that have been previously determined by the board. See: United States v. Utah Construction & Mining Co., supra; Morrison-Knudsen Co. v. United States, supra; and Allied Paint & Color Works, Inc. v. United States, 309 F.2d 133 (2d Cir. 1962), cert. denied, 375 U.S. 813, 84 S.Ct. 41, 11 L.Ed.2d 48 (1963). Additional findings of fact made by our trial commissioner during the course of the agreed-to trial *de novo*, however, are not precluded by the existence of noncontradictory findings made by the Board in its determination of a dispute over which it has jurisdiction. Moreover, the interpretation of the con-

tract, which is the essence of this dispute, is indisputably a question of law, and is not precluded by the administrative board's previous interpretation of the contract.

Plaintiff no longer argues that the government failed to respond expeditiously to the unexpected condition. The allegedly unreasonable delay was not the result of a failure by the government to act, or of some dilatory action by it, after the errors became known. Within three days after notification of the physical subsurface conditions which plaintiff faced, the government directed plaintiff to continue excavating and proceeded to issue the necessary change orders. We are not herein faced with a situation where the government has hindered or delayed the contractor after a problem arose and recovery has been awarded for an unreasonable period of delay which is the direct result of the government's delay in responding to a changed condition after it has been discovered. See e. g., Anthony P. Miller, Inc. v. United States, 77 F.Supp. 209, 211–212, 111 Ct.Cl. 252, 329–330 (1948); F. H. McGraw and Co. v. United States, 130 F.Supp. 394, 131 Ct.Cl. 501 (1955); J. A. Ross & Co. v. United States, 115 F.Supp. 187, 126 Ct.Cl. 323 (1953).

It is settled that the government is deemed to warrant the adequacy of its plans and specifications to the extent that compliance therewith will result in satisfactory performance. United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918); Warren Bros. Roads Co. v. United States, 105 F.Supp. 826, 123 Ct.Cl. 48 (1952); Railroad Waterproofing Corp. v. United States, 137 F.Supp. 713, 133 Ct.Cl. 911 (1956); Laburnum Construction Corp. v. United States, 325 F.2d 451, 163 Ct.Cl. 339 (1963); and Ithaca Gun Co., Inc. v. United States, 176 Ct.Cl. 437 (1966). Equally settled is the previously discussed axiom that the parties may, by virtue of their contract, convert into a dispute arising under the contract a claim which is the result of deficient plans or specifications and, in the absence of an agreement, would be a sufficient predicate for an action based on a breach of the government's implied warranty. Additional compensation which may be awarded for the damages incurred as a result of the deficient plans is limited by that conversion to the specific equitable adjustments provided for in the contract.

Plaintiff argues that the United States v. Spearin, supra, and Laburnum v. United States, supra, line of cases which have awarded recovery for unreasonable delay damages when the government has breached its contract by making an explicit misrepresentation are applicable and remove this claim from the changed conditions article and the limited recovery thereunder postulated by the decision in United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53 (1942).

It is not the delay itself which plaintiff claims is a breach, but that the plans were a breach of contract permitting it to recover for all damages which are the result of that breach, including delay. It has received the direct costs caused by its difficulties in an administrative adjustment and now sues only for its delay costs.

We are not faced with deciding whether a post-dispute delay by the government is unreasonable in duration and, therefore, in breach of the obligation not to hinder or delay the contractor's performance. We are concerned only with determining whether the deficient plans were a breach under the *Laburnum* doctrine (which narrows the scope of disputes which have been made subject to the changed conditions clause) permitting full recovery of all damages incurred, including delay damages; or whether this is a dispute covered by the changed conditions clause (within the meaning of United States v. Utah Construction & Mining Co., supra), and the only recovery for delay is an extension of time and non-assessment of liquidated damages, as provided by United States v. Rice, supra. The duration of

the delay is not itself the breach but is the result of either a changed condition or a breach based on inadequate plans. Our analysis of the *Spearin-Laburnum* exceptions to the changed conditions clause leads us to conclude that they are inapplicable, and plaintiff's only avenue of relief is under its contract.

The Supreme Court, in United States v. Rice, supra, construed the changed conditions clause in terms of the changes article and concluded that a subcontractor who accumulated overhead expenses when the general contractor encountered unexpected subsoil conditions could recover only an equitable adjustment under the contract, in addition to the non-assessment of available liquidated damages penalties and an extension of time for its performance. The parties were not contesting the application of the changed conditions clause, only the scope of recovery that it afforded. Moreover, the subcontractor claimed delay damages because the defendant had failed to make the building available at a particular time. The Court held that the contract did not bind the government to have the property ready for work by the subcontractor at any particular time and that the "failure to furnish" was not in breach of any contractual obligation.

The delay in *Rice* was the result of changes in the specifications made necessary when the general contractor encountered subsurface conditions which differed from those shown on the drawings. That generated the problem but was not the basis of the breach claim. The Court found that the failure to furnish caused a delay but that the delay itself was incident to a change permitted by the contract. The failure to furnish at a specific time was not an independent breach because there is no obligation to furnish the site at a particular time. The decision in *Rice* provides for the scope of recovery if a dispute is subject to the changed conditions clause. Jefferson argues that the delay is the result of a breach which occurred when the government furnished inadequate plans. Delay which is the result of a breach, it continues, is unreasonable and, therefore, compensable.

Plaintiff claims that a breach occurred because this situation is controlled by Laburnum Construction Corp. v. United States, supra, and the subsequent decisions which have consistently followed *Laburnum*, including Commerce International Co. v. United States, 338 F.2d 81, 167 Ct.Cl. 529 (1964); J. G. Watts Construction Co. v. United States, supra; Schmid v. United States, 351 F.2d 651, 173 Ct.Cl. 302 (1965); and J. D. Hedin Construction Co. v. United States, 347 F.2d 235, 171 Ct.Cl. 70 (1965).

The demarcation line between "pure breach" claims and controversies covered by Article 4 of the contract, which we evolve from those and other decisions, is based on a finding of some fault in the defendant's action (or inaction) when it supplied the erroneous plans and specifications to the contractor. It is the presence or absence of some act by the government which permits us to conclude that the contractor cannot reasonably be said to have submitted a particular problem (which arises because of those plans) to resolution under the contract. The contractor, however, has, or should have, contemplated that a changed condition which is discovered despite the best efforts of the government to obtain and furnish accurate plans might occur. Problems which arise as the result of a failure to be reasonably careful in the preparation of the plans and the information upon which the plans are based, are the bases for a breach claim. Mere proof that a specification or plan is wrong does not establish a breach.

The contractor in Laburnum Construction Corp. v. United States, supra, argued that the unreasonable periods of delay which were the result of errors in the specifications and tardiness in correcting those errors constituted a breach. The court held that the compensable delays occurred during two specific periods of inaction by the government and were the result of the combined failure to rectify the errors after they became known, failure to remove trash which prevented ac-

cess to the construction area and failure to expeditiously authorize a replacement for a faulty joint after it was clear that the joint required by the specifications was inadequate. No changed condition was involved.

We noted that in *Rice* the delay was caused by factors outside the government's control. In contrast, in *Laburnum* the government failed to correct the plans for an unreasonable period and furnished plans which, by their egregious errors, reflected inadequate care in preparation. The errors included placement of piles in a swamp area and road supports on the steps of existing buildings. With a minimum of care defendant would have known of the errors in its plans and for that reason, primarily, we found the government at fault in issuing the erroneous plans and liable for damages based on breach. Proof that the plans are deficient is critical to breach recovery, as is proof that the damages incurred are the result of the deficiencies. In the absence of government fault, however, compensation for and correction of the errors is provided for by the contract.

In Saddler v. United States, 287 F.2d 411, 152 Ct.Cl. 557 (1961), an Article 3 change order case, also relied on by Jefferson, plaintiff argued that the change was beyond the scope of the contract and in breach thereof. That case is in applicable to the changed condition claim presented by Jefferson.

The government's negligence in setting stakes which governed road construction was the basis for the recovery awarded the contractor in J. G. Watts Construction Co. v. United States, supra, based on a breach claim. Fault on the part of the government was again the basis of liability. We agreed with the trial commissioner "that the slope and reference stakes placed by the Government were not within reasonable limits of engineering accuracy" (355 F.2d at 577, 174 Ct.Cl. at 6), as indicated by the number of easily correctable errors involved. The failure to observe reasonable standards of accuracy was essential to our finding liability.

In Commerce International Co., Inc. v. United States, supra, the government unreasonably delayed furnishing the contractor with parts and drawings. That claim involved a breach based upon a failure to furnish and is inapplicable to the breach based upon erroneous plans.

The court, in Schmid v. United States, supra, presented with an erroneous interpretation of the contract by the contracting officer, found the *Rice* doctrine inapplicable and awarded recovery. The element of fault was a misinterpretation of the contract by the contracting officer permitting the court to award recovery based on a breach.

Plaintiff's delay-damages claim in J. D. Hedin Construction Co. v. United States, supra, was based on faulty specifications and the delays which resulted from defendant's tardiness in correcting the errors after they were evident. We adopted the trial commissioner's conclusion that "the Veterans Administration not only was in error and negligent in preparing the specifications, but also unduly delayed in correcting the faulty design; * * *." (347 F.2d at 240, 171 Ct.Cl. at 75). Again the elements of negligence and fault were present.

We found that a changed condition did not occur because the density of the subsoil which created the difficulty was known at the time the specifications were issued and that these were the exact conditions later encountered. Plaintiff could not obtain any additional compensation by virtue of a changed condition under the contract, but we awarded recovery because "the necessity for the change resulted from defendant's failure to properly evaluate the *known* subsurface conditions." (347 F.2d at 244, 171 Ct.Cl. at 81). By its failure to evaluate the available information and by furnishing plans which did not reflect that information defendant was at fault and a breach occurred. We noted, however:

There is no doubt in our minds that under the originally specified piles satisfactory performance would not have resulted. * * * However, this by itself does not constitute a breach of the

implied warranty [conformity to plans results in satisfactory performance]. [347 F.2d at 243, 171 Ct.Cl. at 80].

In Luria Bros. & Co. v. United States, supra, the contractor alleged that the plans and specifications were faulty and that the government was dilatory in making required changes. Defendant had supplied its non-government architect with boring sample data but the bearing value of the subsoil, essential to the contract and stated on the plans to be satisfactory, had never been tested. When the subsoil was later found to be insufficient for the 15-ton bearing capacity required by the drawings, the court found the defendant at fault and awarded recovery based on breach, concluding:

* * * Defendant should have determined whether the subgrade rock had adequate bearing capacity prior to approving * * * the first * * * footings. [369 F.2d at 708, 177 Ct.Cl. at 688].

[T]he changes made as a result of encountering the unsatisfactory material at the subgrade elevations were of such magnitude that they were not within the scope of the original contract but rather constituted a breach thereof. [369 F.2d at 707, 177 Ct.Cl. at 687].

The defendant did not exercise reasonable diligence as evidenced by its failure to make pre-contract bearing value tests and by the scope of the changes necessary to complete the contract. Reasonable care had not been exercised either in the preparation of the plans or in obtaining the requisite underlying information. Moreover, the government had made a definite statement that the subsoil was adequate.

The contract specifications for construction of the drydock involved in United States v. Spearin, supra, were defective. A dam in a connecting sewer, known by defendant to cause overflow and back-up, made the sewer built by plaintiff according to the government-furnished plans inadequate. The question of changed condition or breach of contract was not involved in the Court's decision.

To circumvent the general contract law rule that additional compensation is not recoverable when unforeseen conditions are encountered by a contractor who has agreed to perform a fixed-sum contract which is capable of performance, the Supreme Court found that the implied warranty was breached by the defective plans. However, resolution of and compensation for additional costs incurred as a result of unforeseen conditions which, by agreement, are "under" the contract, albeit otherwise capable of classification as a beach of the warranty, make the Spearin decision inapplicable. Spearin indicates the extent of recovery if a particular dispute is a breach. Where, however, the parties have agreed to an administrative determination, the contractor cannot unilaterally opt to recast the dispute into a pure breach mold and sue directly in the court seeking remedies other than those provided for by the contract. The implied warranty—changed condition, dichotomy is the threshold question which must be resolved before the Spearin decision becomes applicable. Where, as in this case, we find that the particular controversy has been made subject to resolution under the provisions of the contract, the parties may waive the administrative determination but the contractor cannot avoid the remedies provided for in its contract.

Where the court has concluded that the unforeseen condition encountered was not the fault of either party, as in Continental Illinois National Bank and Trust Co. of Chicago v. United States, 101 F. Supp. 755, 121 Ct.Cl. 203, cert. denied, 343 U.S. 963, 72 S.Ct. 1057, 96 L.Ed. 1361 (1952), recovery for overhead losses incurred during a delay is denied. The contractor encountered unexpected soft ground and water when excavating for foundation footings, which were contrary to the specifications and drawings and made them erroneous. We concluded that a changed condition occurred and award-

ed only the compensation provided for in the contract.

 We turn now to the particular facts in this case. The borings, to the point of refusal, were accurate. They were made in close proximity to the foundation pad sites. There has been no showing of a lack of care in the preparation of the borings or the evaluation of the available data. No specific representation that rock existed was made, and it was only plaintiff's supposition that refusal meant more than merely the point at which, for some unstated reason, the drill ceased to penetrate the subsoil. Plaintiff has shown only what is obvious, that the borings, and the plans upon which they were based, were wrong. Plaintiff, perhaps reasonably, anticipated rock, and defendant by its plans indicated that at the point of refusal it expected to find a suitable base for the foundation pad. Both were incorrect and neither has been proved to be at fault. In the absence of proof of some act or omission from which we can deduce that defendant is at fault we cannot conclude that there has been a breach within the *Laburnum* exception and, therefore, recovery is limited to the remedies provided for under the contract.

Moreover, defendant specifically provided for the possibility that its expectation of a suitable base at the refusal point would not occur by providing for the procedures which were to be followed when the depth indicated on the plans was reached.

Paragraph 6–05(b) of the specifications provides in pertinent part as follows:

> When excavation for foundations (except in rock) have reached the depth shown, at least four borings 8 inches in diameter and 3 feet deep, shall be made where directed. If the

material disclosed is satisfactory to the Construction Engineer, holes shall be filled with concrete. Excavations carried to further depths, upon direction of the Construction Engineer, will be considered as Changed Conditions in accordance with General Provisions. Foundations shall not be placed until directed by the Construction Engineer.

Plaintiff attempts to limit the application of that provision to footings where it did not anticipate rock existed. We cannot accept that construction. A suitable base was anticipated by both parties and if they were in error the contract provided for that specific contingency and made Article 4 applicable. If rock was encountered at the depth indicated plaintiff would proceed to pour the concrete for a footing. If rock were not found the contract provided for the procedures to be followed.

 Where the conditions actually encountered during excavation differ materially from those indicated by the plans and no fault in the preparation of the borings, drawings, or plans is proved,[4] the first clause of Article 4 is applicable and the remedies available thereunder, as explained by United States v. Rice, supra, are an equitable adjustment, non-assessment of liquidated damages, and an extension of time. See United Contractors v. United States, 368 F.2d 585, 177 Ct.Cl. 151 (1966). Plaintiff has received the remedies to which it is entitled under the contract and no further recovery is available. This materially different condition falls specifically within Article 4 and, therefore, we deny plaintiff any additional recovery. Count one of the petition is dismissed.

## II.

In Count four of the petition plaintiff claims that it was required to, and did in fact, excavate 1052.52 cubic yards of rock,

---

4. Recovery under the first clause of Article 4 requires only that the actual conditions differ materially from those indicated on the plans. There need be no finding of fault, that the contractor was actively misled, or that the government has withheld, concealed or mis-stated any information. United Contractors v. United States, 368 F.2d 585, 177 Ct.Cl. 151 (1966) (368 F.2d at 597, 177 Ct.Cl. at p. 165, n. 6, and cases cited therein.)

but that defendant arbitrarily paid for only 480.65 cubic yards. Plaintiff claims $16,447.35 for rock excavation costs which remain unpaid.

■ This claim was the subject of an appeal from the contracting officer's denial to the GSA Board of Contract Appeals where the claim was denied in its entirety. We conclude that there was substantial evidence to support that denial.

In preparing its bid, plaintiff did not include any amount for rock excavation and assumed that it would be paid a unit basis price for necessary excavation. There are neither contract provisions nor specifications which cover separate rock excavation costs. Prior to a pre-construction conference at which separate rock payments were discussed, plaintiff had submitted its bid for the fixed-price contract. The bid was accepted and the contract signed. The minutes of that meeting were never introduced into evidence. Plaintiff's witness, however, testified that the only GSA employee present at the meeting told plaintiff that the question would be taken under advisement.

Plaintiff relies heavily on a letter from the government's consulting engineer (an independent architect employed to prepare the specifications) which reads:

Our office had telephone conversation with Mr. Alvin M. Warden, coordinator for G.S.A. in Washington, during period of preparation of specifications, regarding specifications for rock excavation and payment and were told that G.S.A. would provide same.

Evidently these were overlooked as the final spec does not make reference to rock excavation and payment.

It is our usual policy that actual measurement of rock ledge be made by the general contractor, and verified by the Resident Engineer prior to removal. One method satisfactory to us is to draw outlines on graph or chart paper ruled off in squares and to record before and after elevations in the case of ledge rock. However this is done, our Resident Engineer will be responsible for verification.

As to extra payment for rock or boulders removed, we believe the unit price to be a matter of negotiation with the District Office of G.S.A.

Plaintiff performed the excavation but did not request any payment from the contracting officer until after all of the work had been accomplished.

A modification request thereafter sent by the General Services Administration reads:

Furnish all labor, materials and equipment necessary to accomplish the following:

1. Remove all ledge on site of pump house necessary to reach design level.

2. Remove all ledge necessary to place utilities at their required elevation.

The above is to include only that ledge *not* required by the plans and specifications.

In response, plaintiff asked $13,695.40 for item 1 and $16,101.95 for item 2. After several discussions and an exchange of correspondence plaintiff continued to claim payment for all rock it had encountered, but the government agreed to pay only for the rock which had not been indicated on the plans.

The architect engineer was not the GSA contracting officer and had no authority to bind the government. The Mr. Warden referred to as a "coordinator for GSA Washington" was not identified at the hearing. Testimony by a government witness showed that the GSA personnel had been directed to keep records of all rock excavated and that the total amount actually removed was not in dispute. As to each item disallowed by the defendant, its witness indicated where the plans showed the existence of rock or the borings indicated that rock was anticipated.

On that evidence our trial commissioner concluded that substantial evidence exists in support of the Board's determination. Plaintiff did not except to the trial commissioner's recommendation

and, as stated before, at oral argument that claim was waived. We adopt that recommendation and, therefore, dismiss the petition both as to Count one and as to Count four.