**GENERAL DYNAMICS CORPORATION**

v.

**The UNITED STATES.**

No. 21–76.

United States Court of Claims.

July 8, 1977.

Herbert L. Fenster, Washington, D. C., attorney of record, for plaintiff; Wilsie H. Adams, Jr., and Sellers, Conner & Cuneo, Washington, D. C., of counsel.

Claud A. Daigle, Jr., Patent Section, Civil Division, U. S. Dept. of Justice, with whom was Asst. Atty. Gen. Barbara A. Babcock, Washington, D. C., for defendant. James D. Stokes, Jr., Washington, D. C., attorney of record.

Before NICHOLS, KASHIWA and BENNETT, Judges.

BENNETT, Judge.

This action for patent infringement requires us to decide whether an unappealed decision of the Armed Services Board of Contract Appeals (the board) against the Government on the existence of a license to use a patent under the standard Patent Rights clause of a Government contract

now precludes the Government from raising the license as a defense to the alleged infringement. The Government says that the decision does not preclude it, arguing that the board's ruling was purely advisory and therefore not binding on it under *S & E Contractors, Inc. v. United States,* 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972). We conclude that on the peculiar facts of this case, the Government must abide by what the board held.

1. Selected portions of the clause follow:
    "33. Patent Rights
    "(a)(i) The term 'Subject Invention' means any invention, improvement or discovery (whether or not patentable) conceived or first actually reduced to practice either—
    "(A) in the performance of the experimental, developmental, or research work called for or required under this contract; or
    "(B) in the performance of any experimental, developmental, or research work relating to the subject matter of this contract which was done upon an understanding in writing that a contract would be awarded;
    provided that the term 'Subject Invention' shall not include any invention which is specifically identified and listed in the Schedule for the purpose of excluding it from the license granted by this clause.
    \* \* \* \* \* \*
    "(b)(1) The Contractor agrees to and does hereby grant to the Government an irrevocable, nonexclusive, nontransferable, and royalty-free license to practice, and cause to be practiced by or for the United States Government, throughout the world, each Subject Invention in the manufacture, use and disposition according to law, of any article or material, and in the use of any method. No license granted herein shall convey any right to the Government to manufacture, have manufactured, or use any Subject Invention for the purpose of providing services or supplies to the general public in competition with the Contractor or the Contractor's commercial licensees in the licensed fields.
    \* \* \* \* \* \*
    "(c) The Contractor shall furnish to the Contracting Officer the following information and reports concerning Subject Inventions which reasonably appear to be patentable:
    "(i) a written disclosure promptly after conception or first actual reduction to practice of each such Invention together with a written statement specifying whether or not a United States patent application claiming the Invention has been or will be filed by or on behalf of the Contractor;
    "(ii) interim reports, at least every twelve months, commencing with the date of this

The controversy on which the board ruled had its genesis in contract NObsr–77628, a cost-plus-fixed-fee research and development contract entered into between plaintiff and the Government, acting through the Department of the Navy, on June 16, 1959. The contract called for plaintiff to design and furnish experimental, mock-up, and developmental models of a single sideband radio set and a single sideband portable transceiver. The Patent Rights clause of the contract [1] granted the Government

contract, each listing all such Inventions conceived or first actually reduced to practice more than three months prior to the date of the report, and not listed on a prior interim report, or certifying that there are no such unreported Inventions; and
    "(iii) prior to final settlement of this contract, a final report listing all such Inventions including all those previously listed in interim reports.
    \* \* \* \* \* \*
    "(f) If the Contractor fails to deliver to the Contracting Officer the interim reports required by (c)(ii) above, or fails to furnish the written disclosures for all Subject Inventions required by (c)(i) above shown to be due in accordance with any interim report delivered under (c)(ii) or otherwise known to be unreported, there shall be withheld from payment until the Contractor shall have corrected such failures either ten percent (10%) of the amount of this contract, as from time to time amended, or five thousand dollars ($5,000), whichever is less. After payment of eighty percent (80%) of the amount of this contract, as from time to time amended, payment shall be withheld until a reserve of either ten percent (10%) of such amount, or five thousand dollars ($5,000), whichever is less, shall have been set aside, such reserve or balance thereof to be retained until the Contractor shall have furnished to the Contracting Officer:
    "(i) the final report required by (c)(iii) above;
    "(ii) written disclosures for all Subject Inventions required by (c)(i) above which are shown to be due in accordance with interim reports delivered under (c)(ii) above or in accordance with such final reports or are otherwise known to be unreported; and
    "(iii) the information as to any subcontractor required by (h) below. The maximum amount which may be withheld under this paragraph (f) shall not exceed ten percent (10%) of the amount of this contract or five thousand dollars ($5,000), whichever is less, and no amount shall be withheld under this paragraph (f) when the amount specified by this paragraph (f) is being withheld under other provisions of this contract. The withholding of any amount or subsequent pay-

an irrevocable, nonexclusive, nontransferable, royalty-free license in all inventions (whether patentable or not) "conceived or first actually reduced to practice" in the performance of research and development work under the contract. Some nine patented inventions held by plaintiff were ultimately identified as useable for performance of the contract, by agreement of plaintiff's and the Navy's representatives during a conference in May 1964. However, at that time, and continuing down to the present, plaintiff conceded that only four of the inventions were licensed to the Government under the Patent Rights clause. The other five, according to plaintiff, were conceived and reduced to practice during plaintiff's own, independent project to develop a single sideband transceiver, called the SC900A, prior to the award of contract NObsr–77628, and thus were not licensed to the Government under that contract.

Less than 1 year after this conference, in March 1965, plaintiff informed the Navy that the latter's then-intended procurement of single sideband radios from another contractor would infringe the five patents. The Navy responded that it was licensed to practice those inventions under the Patent Rights clause of the parties' contract, on the theory that they had first been conceived or reduced to practice in the course of performing the contract. Plaintiff refused the Navy's request to execute confirmatory licenses for the Government to practice the inventions, but did not again raise its infringement claim until February 1968, after the procurement from the other contractor was completed. In March 1968 the Navy repeated its original response, having concluded that plaintiff's submission of additional data in February in support of its position did not prove actual reduction to practice prior to the contract award. Following further exchange of correspondence, the contracting officer for NObsr–77628 rendered a "final decision" determining that the Government was licensed to prac-

tice the five inventions, and informed plaintiff that "[d]ecisions on disputed questions of fact and on other questions that are subject to the procedure of the Disputes clause [of the Government contract] may be appealed in accordance with the provisions of the Disputes clause."

Plaintiff appealed the contracting officer's decision to the board, where the parties presented evidence and made arguments on the license issue. Neither party suggested at any time before the board's decision was rendered that the board lacked jurisdiction to decide the matter under the Disputes clause, nor was lack of jurisdiction raised by the board. Plaintiff prevailed in the proceeding, the board finding that the five inventions had been conceived and actually reduced to practice prior to the award of the research and development contract. *General Dynamics Corp., Electronics Div.,* ASBCA No. 14466, 73–1 BCA ¶ 9960 (Mar. 22, 1973). This decision, however, though favorable to plaintiff, did not by any means end plaintiff's infringement problem. To the contrary, when plaintiff again brought its claim to the Navy, this time for infringement of four of its patents, the patent counsel for the Navel Electronic Systems Command made use of the board's findings to conclude that two of plaintiff's patents, Nos. 3,054,057 and 3,151,301, were invalid, and therefore that the inventions could be practiced by the Government without infringement. In a letter to plaintiff in May 1975, the patent counsel relied on the board's findings of actual reduction to practice prior to the contract award to determine that the two inventions had been on sale, sold, or in public use more than 1 year prior to the filing of the patent applications, and so barred from being patented by 35 U.S.C. § 102(b) (1970). The letter further held that the other two inventions, patent Nos. 3,060,329 and 3,132,310, were not patentable over the prior art, 35 U.S.C. §§ 102 and 103, making the patents invalid

ment thereof to the Contractor shall not be construed as a waiver of any rights accruing to the Government under this contract. This paragraph (f) shall not be construed as re-

quiring the Contractor to withhold any amounts from a subcontractor to enforce compliance with the patent provisions of a subcontract."

and absolving the Government's use from the claimed infringement. The Government then practiced plaintiff's four inventions without payment of royalties therefor, leading plaintiff to file this action for reasonable and entire compensation.

When the Government answered plaintiff's petition in this court, it pleaded as a defense that it enjoyed a license to practice plaintiff's inventions by virtue of the Patent Rights clause of the research and development contract. Plaintiff thereafter moved to strike that defense, claiming that its assertion is barred by the board's decision that the Government had no such license. We treat plaintiff's motion as one for partial summary judgment. *Cities Service Helex, Inc. v. United States,* 543 F.2d 1306, 1312, 211 Ct.Cl. 222, 233 (1976). Defendant filed its opposition to this motion, saying that the board lacked jurisdiction to make the decision and concluding that it must be treated in this court as a nullity. Defendant also, as an alternative, moved for partial summary judgment, claiming that if the board's findings are made applicable to this action, it is as a matter of law entitled to a ruling that the patents '057 and '301, which the Navy's patent counsel found invalid because of the board's decision that they had previously been reduced to practice, are indeed invalid as barred by 35 U.S.C. § 102(b). This contention plaintiff counters with the argument that the sales or uses of the inventions prior to the filing of patent applications therefor were either solely for experimental purposes, or accomplished in less than 1 year before the applications were filed, thus escaping the statute's on-sale bar. Obviously, plaintiff seeks a trial to establish this argument.

Defendant's position that the board lacked jurisdiction to decide the licensing dispute, and consequently that the facts which it found in rendering its opinion are not binding on the Government in this proceeding, lies at the heart of the controversy presently before us. Where the board's findings are made in a case within its jurisdiction, the reasoning of *S & E Contractors, Inc. v. United States, supra,* and *United States v. Utah Constr. & Min. Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), mandates that they be applied in any collateral proceeding where the same facts are in issue, and that they be so applied without challenge on the Government's part. On the other hand, where the board conducts a proceeding beyond its jurisdiction, its findings of fact therein are advisory only, *see United States v. Utah Constr. & Min. Co., supra,* 384 U.S. at 409–11, 86 S.Ct. 1545. The contours of the board's jurisdiction are fixed by the agreement of the parties, typically expressed in the language of their contract. Thus, "to the extent complete relief is available under a specific provision of the contract, a controversy is regarded as being within the standard Disputes clause," meaning that the board has jurisdiction. *Edward R. Marden Corp. v. United States,* 442 F.2d 364, 366–67, 194 Ct.Cl. 799, 804 (1971).

Defendant makes a very persuasive argument from the terms of the parties' contract that the board had no authority to decide the licensing issue, save in an advisory sense. The Patent Rights clause, the "specific provision of the contract" to which we must look to see if "complete relief is available" from the board under the contract, makes reference only to a remedy of the contracting officer, namely, his right to withhold part of the payment due the contractor if a license is thought to belong to the Government but the contractor refuses to disclose the invention to the Government. This penalty device hardly amounts to the provision of complete relief, either for the Government or the contractor. In any event, it is not involved here, for no part of plaintiff's payment was withheld on account of the licensing dispute, so far as appears from the record before us. If the board's declaration of the parties' rights in the patents was intended to be the complete relief available, this is nowhere spelled out in the Patent Rights clause, or in any other clause of the contract. Though the board has for many years heard and decided li-

censing controversies,[2] this may well have occurred under its charter to make advisory rulings in support of the administrative settlement of claims. We have been apprised of no case where the board has been confronted with a challenge to its jurisdiction of a Patent Rights clause dispute, and has undertaken to rule on it. From this it would be difficult to say that the Secretary of Defense has acquiesced, from a longstanding practice, in an interpretation of the Patent Rights clause according such specific and complete relief in disputes arising thereunder as to give the board mandatory jurisdiction. Thus, if we were to look only to the terms of the parties' contract and interpretation thereof by the Government over the years, we might well be constrained to sustain defendant's position.

■ We think that we need not rule on the scope of the relief available under the Patent Rights clause, however, along with its implications for the board's mandatory jurisdiction, for another ground appears that supports the board's binding jurisdiction of the license controversy. As we said just above, the board's jurisdiction is established by the agreement of the parties. "[T]he coverage of the disputes clause is a matter susceptible of contractual determination, *United States v. Moorman*, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256 [1950]," *United States v. Utah Constr. & Min. Co., supra*, 384 U.S. at 413, 86 S.Ct. at 1555, and so, for this very reason, the board's jurisdiction grows out of what the parties intended, *id.* at 407, 86 S.Ct. 1545, in mutually writing and administering their contract. By their agreement the contracting parties may expand or lessen the kinds of controversies over which the board has mandatory cognizance. This is very different from the situation of the courts. It has been long held and repeatedly said that the parties may not collude to vest jurisdiction in a court, in a case over which its jurisdiction is otherwise lacking, simply by failing to raise the jurisdictional defect. Judicial jurisdiction,

of course, depends upon constitutional and statutory grants, which obviously cannot be altered by litigants. *See, e. g., Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Mansfield, Coldwater & Lake Michigan Ry. v. Swan*, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884); Ct.Cl. Rule 38(h). The contracting parties' agreement to enlarge the mandatory jurisdiction of the board in no way expands the jurisdiction of the court, reviewing the board's action or applying it, but simply alters the kind of proceeding that takes place in that court, from one of plenary consideration to one of limited review of the administrative record and determination, *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), or of unreviewed application, *S & E Contractors, Inc. v. United States, supra*. The agreement to give the board cognizance of a new kind of controversy is no different than the agreement granting it power to determine those disputes that all sides concede it already had authority to decide, such as claims for additional costs caused by a change order. Such an agreement was specifically approved in *United States v. Moorman, supra*.

■ Those who enter a contract may take steps at any time after its execution to modify it. They may modify not only its substantive provisions but its prescribed procedures, including the procedures for the resolution of disputes. Thus, this court said in *Jefferson Constr. Co. v. United States*, 392 F.2d 1006, 1010, 183 Ct.Cl. 720, 725, *cert. denied*, 393 U.S. 842, 89 S.Ct. 122, 21 L.Ed.2d 113 (1968), "the parties may, by a waiver agreement, submit a controversy for initial resolution by the court and thereby modify the contractual agreement to proceed before an administrative board." In *Jefferson* the contractor appealed to the GSA Board of Contract Appeals a decision of the contracting officer awarding it $17,000 and a 21-day extension of time to compensate for construction delays caused

---

2. *See, e. g., Physics Technology Labs., Inc.*, 77–1 BCA ¶ 12301; *Bell Aerosystems Co.*, 67–1 BCA ¶ 6203; *Doak Aircraft Co.*, 1963 BCA

¶ 3684; *Kearfott Div. of Gen. Precision, Inc.*, 61–2 BCA ¶ 3241.

when it encountered unexpected subsoil conditions. The GSABCA upheld the contracting officer's award but denied the contractor's claim for additional damages due to the delay, concluding that the claim was actually one for breach of contract over which it had no jurisdiction. The claim was then tried de novo by the court, on agreement of the parties to do so, the court noting that its conduct of the trial in the first instance did not amount to the "duplicative litigation specifically prohibited by *United States v. Utah Construction & Mining Co., supra,* whereby a dispute is tried before the administrative agency as a claim subject to the contract and then retried before the court as a dispute giving rise to a breach claim." 392 F.2d at 1010, 183 Ct.Cl. at 726. Thereafter the court said it would take and decide the claim and award any relief due, whether it arose under the contract or was purely for breach, since the GSABCA had removed itself from the controversy, no other policy conflicted with the court's assumption of jurisdiction, and the parties had effectively modified their contract to permit this. "Where, as in this case, the Board itself has denied jurisdiction over a claim and the parties have agreed to a trial de novo, the court will decide whether or not the particular dispute is or is not within the scope of the contract and, in either case, give the appropriate relief to which the contractor is entitled." *Id.*

That the parties to a contract may, at the outset of litigation over the contracting officer's decision, modify their contract's provisions on the resolution of disputes, changing the agreed fact finder from one forum to another, is confirmed not only by *Jefferson* and the reasoning of *United States v. Moorman, supra,* but as well by other prior cases in this court. *Stein Bros. Mfg. Co. v. United States,* 337 F.2d 861, 162 Ct.Cl. 802 (1963), *partially overruled on other grounds, United States v. Anthony Grace & Sons,* 384 U.S. 424, 430 n. 6, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966), decided just after *United States v. Carlo Bianchi & Co., supra,* upheld the receipt of additional evidence and fact-finding thereon by the court, where the Government did not object at the time to a de novo

proceeding, despite the Supreme Court's ruling in *Bianchi* that the court's review under the Wunderlich Act must be confined to the administrative record. The court considered the parties' choice of forum—in that instance the choice to proceed before several tribunals—as a procedural matter governed by principles of contract, capable of rearrangement at any time by agreement of the parties, even in the course of litigation. The *Stein Bros,* case was cited by the court in *C. J. Langenfelder & Son v. United States,* 341 F.2d 600, 169 Ct.Cl. 465 (1965), in support of the proposition that the parties, at the outset of trial, could agree to bypass the board and have the quantum of damages fixed by the court, even though their contract and the then-recent decision of the Supreme Court in *United States v. Anthony Grace & Sons, supra,* placed such a determination in the board. *Stein Bros., and Langenfelder* were cited, in turn, by the *Jefferson* opinion. *Accord, Nager Elec. Co. v. United States,* 396 F.2d 977, 982–83, 184 Ct.Cl. 390, 401 (1968); *National Line Co. v. United States,* Ct.Cl. No. 39–76 (order, June 21, 1977). In *H. R. Henderson & Co. v. United States,* 169 Ct.Cl. 228, 245 (1965), where at the contractor's instance, a number of time-consuming proceedings were conducted at the administrative level for relief under the contract, the court would not hear any assertion by the contractor that the administrative fact-finding was outside the Disputes clause and unauthorized. The court concluded that the contractor was estopped.

■ Under the foregoing precedents, we believe that there is no good reason why the Government's challenge to the finality of the board's determination in this court should succeed, and ample reason why the Government should not be permitted to escape the results of the administrative proceeding in which it participated without objection. Just as the Government's attorney in *Jefferson* could agree with the contractor to change the dispute-resolving terms of the contract, or in *Stein Bros.* could waive the restrictions of the Disputes clause (in consonance with the contractor's

wishes), so could he agree to modify the contract's provisions in the present case, when it first came up before the board. If the parties' contract, as originally drawn, did not specify in the Patent Rights clause the availability of such specific administrative relief as to bring a licensing controversy developing out of that clause within the board's mandatory jurisdiction, in accordance with *United States v. Utah Constr. & Min. Co., supra,* there is no reason that the Government's attorney before the board could not agree to a modification which would cure that jurisdictional defect. This he could do, as the attorneys did in *Stein Bros.* and *Henderson,* simply by going forward with the litigation without objecting to the propriety of the forum. We think that the Government's counsel at the board proceeding did so implicitly agree to enter into a contractual modification with plaintiff, vesting the board with all necessary authority to hear and decide the parties' licensing dispute with all the finality of the Wunderlich Act as interpreted in *S & E Contractors, Inc. v. United States, supra.*

■ The Government's agreement to modify the parties' contract, removing all doubt from the board's right and duty to resolve the license issue, is assuredly authorized by the essentially contractual nature of the board's mandatory jurisdiction, and its enforcement in this action is perfectly in keeping with the policy against duplicative litigation. Were we to accede to the Government's argument and grant yet a new hearing, going over the same facts and engaging in fact-finding already once performed, we would violate that policy. To cast aside the administrative record and disposition of the license dispute and require a de novo proceeding in this court would be a wasteful exercise, particularly in light of the fact that the parties were completely satisfied to go before the board at the time. It would also contravene their agreement, which the prior cases say they could make. Accordingly, based upon the precedents, we hold that the modification of the contract, affirming the board's authority to pass upon the parties' license dispute, is to be enforced in this action, meaning

that the facts as found by the board are binding on defendant within the Supreme Court's rulings in *United States v. Utah Constr. & Min. Co., supra,* and *S & E Contractors, Inc. v. United States, supra.* Though defendant claims, as part of its contention that the Patent Rights clause as originally written in the parties' contract afforded no basis for the board's mandatory jurisdiction, that the proceeding in the board was purely an advisory one, it has pointed to no differences between that proceeding and those in which it acknowledges that the board has binding jurisdiction, as concerns the manner of presenting evidence, cross-examining witnesses, finding facts, and so forth. Absent some demonstration that the proceeding was defective, substantially prejudicing defendant's ability to present its case fully and fairly, precisely because it was a Patent Rights clause proceeding, in keeping with the usual manner in which the board conducted such cases, we have no hesitation to adhere to our holding without qualification.

■ The rule which we derive by analogy from the precedents and which we apply to reach our holding, that the board's lack of jurisdiction is a defense that may in effect be waived by failure to object in a timely fashion in that forum, is entirely consonant, as already said, with the contractual nature of the board's authority. This rule is distinguishable from the contrary principle, operating in the courts, that objection to jurisdiction may not be waived, for reasons explained above. Defendant says, however, that application of this rule should not defeat its position. It adheres to its contention that the board's findings should not be accorded finality, within the meaning of *S & E Contractors, Inc. v. United States, supra,* because plaintiff's opposition to defendant's motion for partial summary judgment supposedly amounts to an attack on those findings, bringing the case under *Roscoe-Ajax Constr. Co. v. United States,* 499 F.2d 639, 204 Ct.Cl. 726 (1974). Defendant makes the argument that plaintiff's refusal to agree that the facts as found by the board suffice to allow a determination on

the validity of patents '057 and '301 under the on-sale bar of 35 U.S.C. § 102(b) effectively appeals the board's findings, permitting defendant to reopen the dispute as well.[3]

We find no merit in this contention. First of all, plaintiff is not in fact appealing any part of the board's decision. It is content to rely on the facts the board found and on the result the board reached; it proposes, in further proceedings to determine the validity of its patents, to seek no fact-finding contrary to what the board said. See *Jefferson Constr. Co. v. United States, supra,* 392 F.2d at 1010, 183 Ct.Cl. at 726. Secondly, plaintiff can properly accept the board's fact-finding on the license issue and still ask for a trial to take additional evidence on the validity dispute. Plaintiff asserts that whatever public use it made of its inventions prior to the critical dates, *i. e.,* 1 year before the filing of the patent applications, was purely experimental in nature and thus excepted from the statute's on-sale bar, *Sauquoit Fibers Co. v. Leesona Corp. (In re Yarn Processing Patent Validity Litigation),* 498 F.2d 271 (5th Cir. 1974). The parties' license and validity disputes concern very different legal questions, and plaintiff's experimental use claim not surprisingly can, as it does, raise genuine issues of material fact not decided by the board in the license litigation. Plaintiff, then, is not attacking the board's decision, but is merely asking for a trial to complete the taking of evidence on a matter not before the board. *Roscoe-Ajax* does not apply, and so defendant may not question the board's license determination.

█ Defendant additionally points out that giving res judicata effect to the board's ruling violates, in defendant's view, 10 U.S.C. § 2386 (1970) and 28 U.S.C. § 1498 (1970), which it says together vest exclusive jurisdiction of patent infringement claims against the Government in this court. De-

fendant decries the fragmented litigation of plaintiff's infringement claim, which it says is plaintiff's fault, and contends that the claim should finally be disposed of in a single proceeding here. We cannot disagree with the wisdom of having a claim such as plaintiff's resolved without a multiplicity of proceedings in diverse forums, but we think that this argument of defendant should not affect the result in this case.

In the first place, the fragmentation of this litigation was defendant's own doing, not plaintiff's. Defendant's contracting officer issued the "final decision" on the license dispute, including in it language which suggested that an appeal to the board would be appropriate if plaintiff disagreed with his determination. Defendant's board heard and disposed of the case, without any objection from defendant's attorney there as to the propriety of proceeding with the litigation in that forum. Next, we do not see how it is, on the basis of the information defendant has provided us in its briefs, that the statutes cited above compel a discarding of the board's decision. It is true that this court has been given exclusive jurisdiction over patent infringement claims brought against the Government, but that vesting of jurisdiction is no more exclusive than that granted the court over contract claims in excess of $10,000. Nonetheless, the boards every day hear and determine in the first instance claims for equitable adjustments in excess of $10,000. Had the parties not agreed to the board's authority to do so in their contract, those very claims would of course originally be prosecuted in this court. The court's exclusive jurisdiction of the claims has not precluded the parties to a contract from agreeing to have the facts found in another tribunal, and to have that fact-finding applied by this court. This is not different from what has happened here. Nothing we say here should be construed, however, as indi-

---

3. To make this argument, defendant seems not to be requesting a trial de novo, as it did under its lack-of-jurisdiction contention, but only the opportunity to challenge the correctness of the board's conclusions on the law applied and under the substantial evidence test. Without a

*Roscoe-Ajax* attack by plaintiff on the board's determination, defendant would be precluded from challenging the administrative ruling here by *S & E Contractors, Inc. v. United States, supra.*

cating that we think it is inevitably appropriate to do so rather than to have a genuine de novo court proceeding throughout trial to appeal. It may be that in another case, where a direct attack on the board's jurisdiction under the Patent Rights clause (for the reasons suggested above) is entertained because objection was not waived, the court will consider the purpose of the cited statutes in interpreting the clause's provisions, but defendant's weak showing in its papers regarding those statutes suggests that this case would be an inappropriate vehicle to conclude the matter in defendant's favor.

Defendant's motion for partial summary judgment asks that patents '057 and '301 be declared invalid, relieving the Government from liability for infringement, because granted in violation of the on-sale bar as determined from facts found by the board. Since a genuine dispute exists over the facts material to the invalidity defense, as discussed above, resolution of the matter on summary judgment is obviously not possible. Ct.Cl. Rule 101. Both sides are in agreement that a trial is needed to resolve the infringement claims on the other two patents, Nos. '329 and '310.

Accordingly, in view of the foregoing, plaintiff's motion for partial summary judgment is granted, defendant's motion for partial summary judgment is denied, and the case is remanded to the Trial Division for further proceedings not inconsistent herewith.