**CARL M. HALVORSON, INC.**
v.
**The UNITED STATES.**
No. 352–68.

United States Court of Claims.
June 16, 1972.

---

Wm. R. Morse, Absarokee, Mont., attorney of record, for plaintiff.

Edward M. Jerum, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, and KUNZIG, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

PER CURIAM:

This case was referred to Trial Commissioner Roald A. Hogenson with directions to prepare and file his opinion on the issues of plaintiff's motion and defendant's cross-motion for summary judgment under the order of reference and Rule 166(c). The commissioner has done so in an opinion and report filed on June 29, 1971, wherein such facts as are necessary to the opinion are set forth. Defendant requested review by the court of the commissioner's report and the case has been submitted to the court on oral argument of counsel for the defendant and the briefs of the parties. Since the court agrees with the opinion and recommended conclusion of the trial commissioner it hereby adopts the same, as hereinafter set forth, as the basis for its judgment in this case. Therefore, plaintiff's motion for summary judgment is granted as to plaintiff's claims for delays in contract performance resulting from defendant's defective contract drawings both with respect to the sewerline across the China Creek channel and also with respect to the D Street waterline across Locust Street and, to that limited extent, defendant's cross-motion for summary judgment is denied with proceedings before this court suspended for a period of 90 days to permit the parties to return to the Corps of En-

gineers Board of Contract Appeals for determination of remaining issues on such claims, in accordance with this opinion. With respect to all other claims of the petition, the court concludes that plaintiff's motion for summary judgment is denied, that defendant's cross-motion is granted and that the petition is dismissed.

## OPINION OF COMMISSIONER

HOGENSON, Commissioner:

This contract case questions pursuant to the standards for judicial review prescribed by the Wunderlich Act the finality of a decision of the Corps of Engineers Board of Contract Appeals, ENG BCA No. 2784, 68–2 BCA ¶ 7344.

On April 16, 1962, plaintiff entered into Contract No. DA–45–164–CIV–ENG–62–302 with the Corps of Engineers for performance of certain parts of an overall project relocating a small city named Arlington, Oregon, which was necessitated by the construction of the John Day Dam on the Columbia River.

The nature of the overall project is reasonably summarized in the Board's decision as follows:

\* \* \* The business district and part of the residential area of the City of Arlington were relocated, as was the railroad and a small creek which went through the City of Arlington, known as China Creek. The principal features of the contract work [plaintiff's contract with the Corps of Engineers] were clearing and grubbing, which included removal of old buildings and foundations, construction of a saturated fill area to be utilized as the site of the new business district, relocation of certain streets adjacent to and in the relocated business district fill, construction of a concrete line channel for an existing creek, construction of a roadbed for a railroad shoofly, and construction of channel crossings for the shoofly and certain city streets. All work relating to installation of new sewer and water lines and grading and paving of residential streets were designed and performed under contracts advertised and awarded by the City of Arlington. The responsibilities of the City and the work to be performed pursuant to the authority of the City were set forth in a contract entered into between the City and the Government [United States] on 16 February 1961.

There were four contracts entered into by the City of Arlington to accomplish the parts of the relocation program assumed by the City. Three of them had plaintiff as the prime contractor: No. 1, dated October 9, 1961, for construction of water and sewer systems and street improvements in the relocated residential area, and a new water reservoir; No. 2, dated May 24, 1962, for the construction of the water and sewer systems in the business district fill area and connection of such systems with the systems serving the residential area to the south, which contract was later amended to include installation of a new 8-inch water supply line from the City well house along E Street and connecting to the supply line from the new reservoir; and No. 3, dated June 15, 1962, for raising the City well house in place as well as making modifications thereto.

The fourth City of Arlington contract was one dated November 28, 1962, with another contractor for relocation of the City Hall, which did not involve plaintiff. The only other contract involved in the relocation project was one between the State of Oregon and Pacific Concrete Company for construction of a viaduct, with plaintiff the subcontractor for construction of the viaduct ramps.

Thus, mainly as the prime contractor, but in relatively minor part as a subcontractor, plaintiff performed all of the relocation work, except relocation of the City Hall.

By the terms of its contract with defendant, the City was responsible for the administration of the contracts awarded by it, and retained an architect-engineer

firm which prepared the plans and specifications and acted as the supervising engineer for the City contracts. Defendant by its contract with the City, reserved the right to approve the City's plans and specifications and to review and approve change orders and related expenditures for work to be performed under the City contracts.

Special Condition 1 (SC–1) of plaintiff's contract with defendant required plaintiff to commence the specified contract work within 10 calendar days, and to complete as required by SC–1e all such work including clean-up of the premises within 330 calendar days after receipt by plaintiff of defendant's notice to proceed.

Plaintiff received defendant's notice to proceed on April 19, 1962, and the overall contract completion date was thus fixed as March 15, 1963.

However, Special Condition 1 (SC–1) also provided time limitations on various parts of the contract work and thus for priorities of work completion as follows:

a. The Contractor shall complete the removal, hauling and stockpiling of railroad track materials within 50 calendar days after date of receipt of notice to proceed.

b. The Contractor shall complete the subgrade of the detour, Locust Street, Columbia Street, Main Street and E. Street, except new bridge on Locust Street, within 90 calendar days after date of receipt of notice to proceed.

c. The Contractor shall complete the construction of the China Creek Channel walls from Station 2+77.03 to Station 5+60 on the right; from Station 2+47.46 to Station 7+7.2 on the left; the floor from the designated construction point at Station 6+10 to Station 3+10; the left outlet wing wall and the left stilling basin wall from Station 14+56.42 to Station 15+14.7 within 120 calendar days after date of receipt of notice to proceed.

d. The Contractor shall complete the grading of the Condon Branch Shoofly within 140 calendar days after date of receipt of notice to proceed.

The provisions of SC–1c, *supra,* were modified during contract performance as hereinafter related, with SC–1f added by such modification.

Special Condition 2(SC–2) required plaintiff to pay to defendant as liquidated damages for failure to complete the overall work and each category of priority work within the times fixed in the contract the sums shown as follows for each calendar day of delay within each of the following categories: (a) $50 for the work described in SC–1a; (b) $1000 for that described in SC–1b; (c) $250 for that described in SC–1c; (d) $650 for that described in SC–1d; and (e) $1000 for completion of all work. It was provided that such liquidated damages were accumulative and concurrent.

The various alleged errors of the Board are presented in the order discussed by the parties in their briefs, except that item III (Defective Government drawings) is covered in the discussion of both item II and item IV. Items V and VIII are combined for convenience.

I. Claimed default of Government.

Plaintiff assigns as an error of law the Board's denial of plaintiff's motion for default due to late filing of the Government's answer to plaintiff's complaint in the subject administrative proceedings.

The rules of the Board provide that within 20 days after service of a complaint, or within such longer period as may be allowed by the Board, counsel for the Government shall prepare and file with the Board an answer thereto. Rule 7, 33 C.F.R. § 210.4(g). The answer in subject case was filed 7 days after the 20-day period had elapsed, with no motion by the Government directed to late filing. On March 7, 1967, about 2 weeks after the late filing of the answer, plaintiff filed a motion for

default. By Letter-Order of March 7, 1967, the Board denied plaintiff's motion, stating as follows:

This is in reply to your Motion for Default filed with the Board on 7 March 1967 in the above-identified appeal. The Recorder of the Board has previously investigated the lateness of filing the Answer with the Board and found that the Answer was in the Office of the Chief of Engineers within the specified time, but due to internal office delay was not delivered to the Board until 20 February 1967. Under the circumstances we do not consider the Answer as having been untimely filed with the Board. Furthermore, as indicated in Rule 7 of the Board Rules, it is within the Board's discretion to allow additional time for filing an Answer. Accordingly, for the reasons stated above your Motion for Default is denied.

Plaintiff renewed its motion for default in its brief submitted on the merits of its claims, and the Board in its decision denied such motion for the reasons stated in its Letter-Order of March 7, 1967. The Board further held that a default judgment because of an untimely filing of an answer is not a remedy available in an appeal before the Board pursuant to the Disputes article, citing Loranger Construction Corp., ASBCA No. 9643, 65–2BCA ¶ 5071.

The main thrust of plaintiff's argument is that the Government did not file a motion directed to the late filing of its answer, but the Board took it upon itself to file the answer 7 days later. Plaintiff cites cases involving judicial proceedings to support its contention that the Government had the procedural burden of bringing before the Board a reasonable excuse for late filing. Defendant's response is that the Board was correct in denying plaintiff's motion for default, for not only is the Board empowered to extend the time limit for filing at its own discretion, but lacks authority to impose the sanction of default against an offending party.

█ No authority has been found which would permit the Board to enter a default judgment for the failure of the Government to file timely its answer. The *Loranger Construction Corp.* case, cited by the Board, held:

Neither the contract nor the Rules or Charter of the Board makes judgment for the other party the remedy for failure of the appellant to file its complaint or the failure of the Government to file its answer, within the period prescribed by the Board's Rules. * * * [65–2 BCA at 23,-864]

In Gibmak Corp., ASBCA No. 7077, 1962 BCA ¶3436, cited in the *Loranger* decision, the Board denied appellant's motion to dismiss the Government's answer not timely filed, stating:

* * * The Board advised appellant in the first instance that "The Board's Rules and charter do not provide for the striking of a late pleading or otherwise precluding either party from a consideration of the merits of an appeal under such circumstances." With no intent to condone late pleadings, the Board is compelled under the circumstances to deny appellant's motion. [1962 BCA at 17,-619]

Plaintiff relies heavily on Alloy Products Corp. v. United States, 302 F.2d 528, 157 Ct.Cl. 376 (1962), wherein plaintiff in this court failed to file a reply to defendant's counterclaim, and with respect to the proffered excuse that plaintiff's attorney had erroneously referred to the court's rules and thought no reply was necessary, the court stated:

* * * This we do not think can be construed to relieve plaintiff of the effect of the rules. Under plaintiff's theory, we might just as well discard the rules or hold that they were intended to be meaningless. [302 F.2d at 532, 157 Ct.Cl. at 383]

The court stated that normally it would have to enter judgment for defendant on its counterclaim, but held that the counterclaim failed because the court lacked

jurisdiction over the subject matter of the petition.

█ However, the power of a court to impose the sanction of judgment by default is not the matter in question here. Apparently the Board lacks any such authority. Moreover, under the circumstances of this case, with the Board authorized to extend the time for filing of an answer, with the answer being received by the Board only 7 days late, after having been prepared and inadvertently held in the office of the Chief of Engineers beyond the timely filing date, the reasonable conclusion is that the Board properly exercised its discretion to permit the late filing of the answer. Plaintiff has failed to allege before the Board or before this court any prejudice as a result of the late filing of the Government's answer. Plaintiff failed to prove or offer to prove any such prejudice in the formal hearing held by the Board, even though the plaintiff's motion for default was renewed at the outset of such hearing. Even if it were to be held by this court that it was a procedural error for the Board to permit the late filing of the answer without a formal showing by the Government of reasonable excuse, it cannot reasonably be held that such error was prejudicial and rendered the Board's decision lacking in finality under the Wunderlich Act.

### II. China Creek sewer.

### III. Defective Government drawings.

As part of its overall claim for 40-day delay costs, plaintiff claimed entitlement to recover increased costs for alleged delays in its performance of its priority work on the China Creek channel, occasioned by encountering a sewer not shown within that area on the Government drawings. Under subject contract with defendant, plaintiff performed the required excavation and constructed a new channel (only slightly relocated) with concrete walls and floor for a small creek which ran through the City of Arlington. As part of the overall relocation program, a railroad line which formerly ran along the east side of the channel was rerouted along the west side, with the new line, or shoofly, crossing the channel between stations 3+00 and 6+00. Since construction of the new channel had to be completed in such area before the railroad embankment across such channel could be started, the specifications required priority of completion of certain channel work within 120 calendar days, as described in SC–1c, quoted above. Technical Provision 1–08b (2) repeated such priority of work requirements as follows:

(2) Work on China Creek channel wall from Station 2+77.03 to Station 5+60 on the right; from Station 2+47.46 to Station 7+07.2 on the left; the floor slab from the designated construction joint at Station 6+10 to Station 3+10; the left outlet wing wall and the left stilling basin wall from Station 14+56.42 to Station 15+14.7 shall be scheduled to commence immediately and shall be completed within the time limit hereinbefore specified.

Plaintiff did not commence the SC–1c priority work until July 9, 1962, although required to commence such work immediately following its receipt of defendant's notice to proceed on April 19, 1962.

On the second day of work in the SC–1c priority area, plaintiff encountered and broke a sewerline imbedded across such area at about station 3+10. Because of the ponding of sewage, plaintiff ceased work in such area at the close of the day, July 10, 1962. This obstruction of the SC–1c work was cured on July 11, 1962, when plaintiff at defendant's direction created a by-pass of the section of sewerline across the channel by pumping the sewage from a manhole on the east side of the channel to a manhole on the west side. Plaintiff was paid the costs of such pumping by Modification No. 2 to subject contract. Plaintiff resumed the SC–1c work on July 12, 1962.

The location of the pertinent sewerline section was incorrectly shown on the

contract drawings prepared by defendant. The indicated location was that it crossed the channel upstream from the SC–1c priority area.

Plaintiff phrases the issues before this court as being whether defendant knew that the China Creek sewer had to be deactivated before plaintiff could get into the SC–1c area, and whether the defendant's contracting officer failed to act reasonably to prevent delay. Plaintiff based its claim before the Board on the suspension of work clause of subject contract, General Provision 30, and particularly on paragraph (b) thereof, reading as follows:

> (b) If, without the fault or negligence of the Contractor, the performance of all or any part of the work is for an unreasonable period of time, suspended, delayed, or interrupted by an act of the Contracting Officer in the administration of the contract, or by his failure to act within the time specified in the contract (or if no time is specified, within a reasonable time), an adjustment shall be made by the Contracting Officer for any increase in the cost of performance of the contract (excluding profit) necessarily caused by the unreasonable period of such suspension, delay, or interruption, and the contract shall be modified in writing accordingly.

The Board denied plaintiff's claim for increased costs allegedly caused by delays due to existence of the sewerline across the SC–1c priority area. It found that prior to the breaking of such sewerline on July 10, 1962, neither party knew of the inaccuracy of defendant's drawings as to the location of such sewer, that neither party knew that such sewerline crossed through the SC–1c area, that defendant was not negligent in the preparation of its drawings in that respect, that the time taken to deactivate the sewerline which was believed to cross the channel upstream should not have caused plaintiff to delay its commencement of the SC–1c priority work, and that plaintiff was not justified in delaying such work until administrative action was taken on the upstream sewerline by-pass.

■ With respect to the sewerline encountered across the SC–1c priority work area, the Board stated:

> In conclusion, we find that the appellant had not incurred a compensable delay. The sewer line encountered by the appellant was a changed condition under the Changed Conditions clause; and the appellant was promptly directed to perform the necessary corrective work. The appellant was paid for the corrective work. Under the Changed Conditions clause the appellant is entitled to an equitable adjustment of time and costs for performing the corrective work. The encountering of a changed condition is not a delay suspension or interruption caused by the Government within the meaning of the Suspension of Work clause.

But the fact remains that Modification No. 2 was issued by defendant to plaintiff to perform the extra work of deactivating the sewerline across the SC–1c priority area, which change order was necessitated by the error on defendant's contract drawings which indicated the location of the sewer crossing to be upstream from such priority work area. Plaintiff's work in the priority area was necessarily suspended for the performance of such extra work on July 11, 1962, as found by the Board, and it was an error of law for the Board to deny plaintiff entitlement to recovery of any increased costs resulting from such suspension.

■ In Chaney & James Constr. Co. v. United States, 421 F.2d 728, 731–733, 190 Ct.Cl. 699, 704–708 (1970), in which the same suspension of work clause was involved as that above-quoted, this court held that when a contractor was delayed because defendant's specifications were deficient, such contractor was entitled to recover the extra costs resulting from delay due to the mistakes in the plans, and that its recovery is not limited to an equitable adjustment for changes or-

dered to correct those mistakes. As the court stated, defendant warrants the adequacy of its plans and specifications. If they are defective, defendant is at fault. It is irrelevant whether defendant was or was not negligent in the preparation of them. Laburnum Constr. Corp. v. United States, 325 F.2d 451, 457–458, 163 Ct.Cl. 339, 349–350 (1963); Luria Bros. & Co. v. United States, 369 F.2d 701, 709, 177 Ct.Cl. 676, 690 (1966); Merritt-Chapman & Scott Corp. v. United States, 429 F.2d 431, 432, 192 Ct.Cl. 848, 851–853 (1970).[1]

■ However, after a review of all of the testimony and evidence presented to the Board, it is my conclusion that the Board was supported by substantial evidence and concluded reasonably in its decision that there were no other delays in the performance of the SC–1c priority work resulting from the pertinent error in the contract drawings or from any other acts or omissions of defendant relating to its approval of the plans and specifications and price for work to be performed by plaintiff under a City contract in the deactivation and relocation of the so-called China Creek sewer.

Despite some conflicts in the evidence, it is the reasonable conclusion, supported by substantial evidence in the administrative record, that except for the sewer crossing encountered in the SC–1c area, the so-called China Creek sewer was outside of the priority work area of construction of the China Creek channel. The Board is amply supported in its findings that neither plaintiff nor defendant knew that the sewer crossed through the China Creek channel priority work area. Since the contract drawings showed, albeit erroneously, that the sewer crossed the channel upstream from such area, there was no reason to accelerate the negotiations between the City officials, the railroad involved, and representatives of plaintiff concerning the planned sewer work. It is concluded that the Board reasonably found that there was no justification for plaintiff to delay its commencement of the China Creek channel priority work because of pending negotiations leading to an agreement between plaintiff and the City concerning the sewer work to be done, which agreement was subject to approval of defendant.

Had plaintiff commenced the China Creek priority work immediately upon receipt of defendant's notice to proceed, as it was required to do by the contract provisions, it obviously would have encountered the unknown sewer crossing at an early date, and it can only be concluded that prompt action would have been taken by defendant, as was actually done at a later date, to deactivate that section of the sewerline, with only 1 day of delay to the priority work involved.

The amount of recovery for such delay must be determined in further proceedings before the Board.

III. Defective Government drawings.

IV. D Street waterline across Locust Street.

Also, as a part of its overall claim for 40-day delay costs, plaintiff claimed entitlement to recover increased costs for alleged delays resulting from encountering a waterline at D Street while clear-

---

1. Defendant says that the court indicated in Jefferson Construction Co. v. United States, 392 F.2d 1006, 183 Ct.Cl. 720, cert. denied 393 U.S. 842, 89 S.Ct. 122, 21 L.Ed.2d 113 (1968), that, absent a showing of negligence or like fault in the preparation of the plans, the government is entitled to a reasonable time to take corrective action necessitated by a changed condition. The relevant part of that case, however, did not involve the suspension of work clause but a pure "breach" claim; the reach of the suspension clause is wider. See Merritt-Chapman & Scott Corp. v. United States, 429 F.2d 431, 432, 192 Ct.Cl. 848, 852 (1970). Moreover, in *Jefferson*, the particular contract indications which differed from the actual subsurface conditions were boring data which were not inaccurate (so far as they went) nor negligently prepared; nor was there any misrepresentation. See 392 F.2d at 1015, 183 Ct.Cl. at 733–734. Here, on the other hand, there was a specific and affirmative misrepresentation. [Footnote by the court.]

ing and grubbing in preparation for its performance of construction of the subgrade for Locust Street under the terms of its contract with defendant.

The completion of the subgrade of Locust Street was priority work under SC–1b, *supra,* limited to 90 calendar days after receipt by plaintiff of defendant's notice to proceed. As designed and constructed, Locust Street ran from the west side of the business district in a southeasterly curve through the cleared business district and across the China Creek channel to the east side of the City of Arlington.

The construction of the subgrade of Locust Street was about one-half in cut (station 0+00 to station 8+00), and the balance in fill.

On May 7, 1962, while plaintiff was engaged in clearing and grubbing for the layout work on Locust Street, and before any excavation of cut had commenced, plaintiff encountered at station 6+10 an 8-inch waterline extending along D Street and across the planned location of Locust Street.

Defendant's contract drawings did not show a waterline extending along D Street, but incorrectly showed that such a waterline existed on E Street.

After the discovery of the unanticipated waterline on D Street, a field conference was held on May 9, 1962, attended by the Mayor of Arlington, the City's architect-engineer, a representative of plaintiff, and a representative of the defendant. It was decided to relocate the waterline by a change order to City Contract No. 2, which was about to be awarded to plaintiff. Such contract was awarded to plaintiff on May 23, 1962. Plaintiff mailed its cost proposal on the relocation of the D Street waterline to the City's architect-engineer on May 26, 1962. Plans prepared by the City's architect-engineer for such relocation were mailed to defendant for its approval on June 4, 1962. Defendant's resident engineer on June 6, 1962, authorized the City to proceed with the relocation of

the waterline, and requested that the City forward plaintiff's cost proposal as early as possible for approval by defendant. Before receiving final approval or authorization to perform the work, plaintiff proceeded and completed the relocation of the waterline on June 16, 1962.

By Modification No. 1 to subject contract, hereinafter discussed in detail, defendant's contracting officer granted plaintiff an extension of 40 calendar days for completion of the priority work described in SC–1b, *supra,* (covering the construction of the Locust Street subgrade) because of "interference caused by construction being performed by the City of Arlington on Locust Street during the period of 7 May 1962 to 16 June 1962."

Plaintiff claimed entitlement before the Board to delay costs under the suspension of work clause for such 40-day period. Its principal argument was that plaintiff was delayed because defendant's contracting officer failed to act within a reasonable time with respect to the waterline, and specifically that the Government was negligent in not depicting the waterline on the contract drawings because a complete design investigation would have made the problem known to the contracting officer.

With respect to the claimed delays on account of encountering the D Street waterline, the Board in its decision stated in part as follows:

We now turn to the appellant's claim of entitlement to 40 days delay costs under the Suspension of Work clause. The appellant's claim is premised on the theory that the alleged negligence of the Government in gathering data for the contract plans, in effect, constituted a failure of the contracting officer to act within a reasonable time under part (2) of the Suspension of Work clause. This theory of recovery is disposed of by our earlier finding that the Government had not acted in a negligent

manner in preparing the contract drawings. The appellant ties its claim for 40 days delay costs to the time extension granted by the contracting officer in Modification No. 1. The granting of an extension of time for an excusable delay under the Termination for Default—Damages for Delay—Time Extension clause does not automatically provide a basis for claiming delay costs under the Suspension of Work clause. The question here is: Did the appellant actually suffer delays in its operations as a result of an act of the contracting officer or by a failure to act within reasonable time with respect to the water line?

In analyzing the procedure that was pursued in having the water line corrected, we cannot find that there was any action the contracting officer could have taken under the Government contract but failed to take with respect to the water line at D and Locust Street. * * *

■ As in the case of the encountering of the sewerline across the China Creek channel, the Board erred as a matter of law by applying the wrong test of entitlement to delay damages on account of defective Government drawings. That such drawings were defective as showing the waterline to be on E Street rather than on D Street is an unchallenged fact, as found by the Board, and to the extent to which such defect caused increased costs in contract performance due to delays in the performance of the Locust Street priority work, plaintiff is entitled to recover under the suspension of work clause of subject contract. It is irrelevant whether or not defendant was negligent in the preparation of its drawings in that respect. Any delay which resulted from the defective drawings was unreasonable *per se* and hence compensable. Chaney & James Constr. Co. v. United States, *supra*, 421 F.2d at 732, 190 Ct.Cl. at 707.[2]

■ This rule of law cannot reasonably be abrogated by the circumstances that the defendant by contractual relationship with the City of Arlington had assigned to the City the preparation of plans and specifications for relocation of utility lines, the entering into contracts between the city and contractors for performance of such work, and the administration by the City of such contracts, subject only to the right of the Government to approve the City's plans and specifications, any changes thereto, and cost proposals of any City contractor. An exception to the applicable law cannot reasonably be made merely because defendant had by its own acts placed limitations upon its power to order corrective work which would solve problems encountered by its contractor in the performance of the work required by the Government contract.

The Board stated that the evidence did not show that plaintiff was actually delayed 40 days in its construction of Locust Street, and referred to testimony of witnesses to the effect that when plaintiff uncovered the D Street waterline on May 7, 1962, it continued to perform the necessary clearing and grubbing, including removal of buildings and foundations, until May 23, 1962, that plaintiff commenced layout of Locust Street on May 23, 1962, and that plaintiff was excavating Locust Street from the area of the D Street waterline (station 6+10) down to station (0+00 prior to relocation of the waterline on June 16, 1962.

However, these references to testimony of witnesses fall short of findings of fact, and the Board has not otherwise made findings of fact concerning either the extent of delay or the increased costs of contract performance resulting from plaintiff's encountering of the D Street waterline. Proceedings in this court must be suspended to permit the parties to return to the Board for determination of such issues.

2. See note 1, *supra*: [footnote by the court].

V. Modification No. 1

VIII. Retention of funds as liquidated damages.

On September 29, 1962, defendant's contracting officer issued Modification No. 1 to subject contract. Plaintiff accepted such modification under protest.

Such modification allowed a 40-day extension of time for performance of each category of priority work designated in clauses SC–1b through SC–1e, *supra*.

It changed clause SC–1c by deleting therefrom that part of the completion of the left wall of the China Creek channel from station 2+47.46 to station 3+18.86. That deleted portion was then included with additional sections of the left wall in a new category of priority work by adding new paragraph f to Special Condition 1 (SC–1), which provided:

> f. The Contractor shall complete the construction of the China Creek channel wall on the left from Station 2+47.46 to Station 3+18.86 and from Station 7+07.2 to Station 8+87.2 within 174 calendar days after date of receipt of notice to proceed.

It is to be noted that the part of the construction of the left wall of the channel from station 7+07.2 to station 8+87.2 had not been previously included in any priority work, and was part of the contract work to be completed within the overall contract performance time.

For this new category of priority work, Modification No. 1 provided that plaintiff would pay liquidated damages in the sum of $30 for each calendar day of delay in completing such work.

Plaintiff's claim before the Board was that the times for completion of the SC–1c priority work, as amended, and the SC–1f priority work should be extended respectively for 10 and 5 days because the change created problems of access and disturbed plaintiff's orderly performance of the channel work. Plaintiff completed the SC–1c priority work 10 days after the amended comple-

tion date and the SC–1f priority work 5 days after the expiration of the 174-day period allowed.

Plaintiff was assessed liquidated damages for such late performance, and sums otherwise payable to plaintiff were retained by defendant in payment thereof.

■ The Board in its decision extensively reviewed the conflicting testimony of various witnesses concerning whether or not the changes in the priority work on the channel created an access problem which hampered plaintiff's performance of such work. Obviously the Board chose to believe the testimony of the Government witnesses that there was no access problem created, and that plaintiff's delays were due to placement by plaintiff of unsuitable material which had to be rejected and replaced, delays by plaintiff in the erection of its batch plant, and plaintiff's failure to commence excavation in the channel until July 9, 1962. The Board concluded its review of the testimony by stating that plaintiff had not shown entitlement to the requested time extensions. Basically such conclusion is an ultimate finding of fact, which clearly is supported by substantial evidence in the administrative record.

Plaintiff's challenge of the finality of the Board's decision on this issue is that prior to the issuance of Modification No. 1, the parties had by plaintiff's offer and defendant's unqualified acceptance reached an agreement concerning changes in the priority of the channel work, which agreement was contrary to the terms of the later modification and that the modification was a breach of the prior agreement.

In response to plaintiff's argument, the Board stated that it did not agree that defendant's letter of September 7, 1962, was an unqualified acceptance of plaintiff's written proposal of August 10, 1962.

By its August 10, 1962, letter plaintiff plainly proposed modification of clause SC–1c by deletion of the section

of the left wall of the channel from station 2+47.46 to station 3+18.86 and by adding the left wall section from station 7+07.2 to station 7+97.2. On August 17, 1962, a conference was held between representatives of plaintiff and defendant, at which plaintiff repeated this same proposal.

There was conflicting testimony before the Board as to whether the parties orally agreed at the conference that changes would be made in the priority of the channel work as was later set forth in Modification No. 1.

In evidence before the Board was a written record of the minutes of the conference, prepared by one of defendant's representatives who attended. Regarding the purported oral agreement of the parties, these minutes stated as follows:

> The Government representative stated that the upstream wall [station 2+47.46 to station 3+18.86] could be deleted with no problem but that two downstream walls from Station 7+07.2 to 8+87.2 were desired in order to permit the placement of the Shoofly embankment.

> The Contractor then stated that he was agreeable to install the left wall from Station 3+18.86 to 8+87.2 within the time set forth in the proposed revision of SC1.c of the Completion Schedule, as the upstream wall, while serving no purpose at this time, would require removal of the existing channel bridge; thereby causing more traffic problems, and the additional downstream walls would permit unobstructed placement of the Shoofly embankment.

Testimony for defendant before the Board was that such an oral agreement was reached, whereas plaintiff's witness denied that such a discussion occurred.

On September 7, 1962, defendant's contracting officer wrote to plaintiff concerning delays in contract performance and concluded such letter by stating:

> In connection with changes that we are contemplating in making regarding completion of certain portions of the China Creek channel walls, your proposal contained in your letter dated 10 August 1962 to complete the downstream portion of the wall at an earlier date and in consideration therefor, defer completion of the unaffected upstream section as described, is accepted. Additional provisions will be added to Paragraph SC–1 of the specifications to reflect the revised requirements with a separate completion date of 10 October 1962. A contract modification providing for extensions of time and changes as described above is currently being prepared and will be forwarded to you for signature in the near future.

With such evidence before the Board concerning the negotiations of the parties, it was reasonable for the Board to conclude that there was not an unqualified acceptance by defendant of plaintiff's written proposal.

■ However, it may be assumed for the purposes of this case that there was a firm agreement reached between the parties for the limited changes proposed by plaintiff, but the Board's decision should be sustained on the grounds stated by it that the contracting officer had the right to make changes in the work under the Changes article, without agreement by the contractor. There was no showing whatsoever that defendant ever waived its right to make changes in the specifications within the general scope of the contract, as were the changes ordered by Modification No. 1. It cannot reasonably be held that prior negotiations of the parties precluded defendant from thereafter exercising its right unilaterally to order changes different from those previously agreed to by the parties.

VI. Delays arising out of excessively deep utility trenches and conflicting grade lines of utilities.

Plaintiff claimed before the Board that it was delayed and forced to accel-

erate the contract work because of the conflicting grade of utility lines and excessive depths of utility line excavation.

Plaintiff argued that the design depth for installation of the municipal utilities on Locust Street under City Contract No. 2 was so deep as to make it impossible for plaintiff to proceed under the Government contract with the installation of the storm sewer on Locust Street. Specifically, plaintiff asserted that it was precluded from commencement of installation of the storm sewer for 38 days, the time required for installation of the municipal utilities, because of the very deep trench cut required under the City contract. Plaintiff contended that defendant was aware of such condition prior to the letting of subject contract and failed to account for the same.

Technical Provision 1–08b(3) of subject contract provided:

(3) The grading of Locust Street * * * shall commence and be completed within the time limit hereinbefore specified; and turned over to the municipal contractor for installation of water and sewer lines. During this time the storm sewer could also be installed by the Contractor. * * *

Plaintiff argued before the Board that such provision was susceptible of no other interpretation than that which would have allowed it as Government contractor to proceed with the installation of the storm sewer under the Government contract simultaneously with the installation of the City water and sewer lines under the City contract.

The Board held that such provision did not require the plaintiff to install the storm sewer during the time plaintiff as City contractor was installing the water and sewer lines on Locust Street, but that plaintiff could have proceeded simultaneously with such work.

It is my conclusion that the Board ruled correctly, even considering but rejecting as not applicable plaintiff's present position before this court that it was entitled to application of the familiar doctrine that within the zone of reasonableness, plaintiff is entitled to have its interpretation of ambiguous contract language applied against defendant as scrivener of the allegedly ambiguous provision.

■■■ The Board was supported by substantial evidence in finding, and its findings in that respect are not challenged by plaintiff before this court, that both the installation of the sewer under the Government contract and the installation of the water and sewer lines under the City contract could have been performed simultaneously had plaintiff, as City contractor, chosen to excavate a narrower trench for the municipal utility lines, with shoring to the design depth in lieu of an overexcavated trench with no shoring, and that while shoring is less economical than overexcavating, it is a recognized procedure for excavation.

Plaintiff wholly fails to challenge before this court well reasoned conclusions by the Board that plaintiff as City contractor and also as Government contractor was on notice that it could install the storm sewer simultaneously with the installation of the City's water and sewer line, that plaintiff should have known that overexcavation under the City contract would delay its excavation under the Government contract, that plaintiff elected to use the more economical method of overexcavation in lieu of shoring for the installation of the municipal utilities, and that the delay claimed by plaintiff in the installation of the Government storm sewer was the result of the plaintiff's own choice of operations and not as a result of a procedure made mandatory by defendant.

As a second part of this claim, plaintiff argued to the Board that it was delayed in installation of the Government storm sewer by a conflict in grades between such storm sewer and the City's waterline installed on Locust Street.

In this respect, plaintiff makes no attack before this court on the Board's correct holding that the City contract

did not require plaintiff to install the waterline at a specific depth, but provided only for a minimum depth. Plaintiff proceeded to install the waterline at the minimum depth, which required lowering of the waterline in two areas to solve the resulting conflict in grade with the Government storm sewer. The City paid plaintiff for the cost of labor and material for digging and reinstalling such waterline, with such payment approved by defendant pursuant to its contract with the City. Defendant reimbursed the city for such payment.

The Board held in effect that there was no fault on the part of the defendant for the alleged conflict in the grade between the storm sewer and the waterline, but rather found that the grade conflict was avoidable and would not have occurred if plaintiff had properly exercised its responsibility to be informed of the requirements of both subject contract and the City contract under which it was operating as prime contractor.

Plaintiff's only attack before this court upon the Board's conclusion in this respect is the query as to how come defendant reimbursed the City for the cost paid to plaintiff for the corrective work, if defendant was not at fault for the alleged conflict in grades. The Board's record of proceedings does not explain the grounds upon which such payment was made. Of course, the fact of payment was probative of the validity of plaintiff's position, but it cannot be held to be dispositive of the issue. Such fact was reasonably to be rejected as conclusive in nature, when the record is viewed in its entirety. Not the least significant of the rebutting circumstances was that plaintiff was not required to install the waterline at a specific depth, but rather at or below a minimum depth, and had it reasonably coordinated its work under the two contracts, being the prime contractor on both, it could have avoided any conflict in grades.

## VII. Columbia Street drainage problems.

Plaintiff claimed before the Board that repeated flood damage and clean-up in and around Locust and Columbia Streets caused delays and interruptions and had an accumulative detrimental effect which increased the costs of contract performance.

Plaintiff ascribed fault on the part of defendant for such occurrences because the City of Arlington by its architect-engineer firm had proposed to defendant before the letting of City contracts that the City's plans and specifications include provisions for installation of a storm sewer system in the new residential area of the City, that a proposed design was submitted by such architect-engineer firm to defendant, but defendant rejected the inclusion of such a storm sewer system in the relocation project.

In its decision the Board recognized four instances when flood damage was done to completed work on or along Columbia Street or on Locust Street nearby. On each occasion defendant directed plaintiff to perform corrective work, and plaintiff without qualification accepted all four modifications, with the prices ranging from a low of $200 to a high of $728. Each of these accepted modifications contained the following statement: "It is understood and agreed that on account of the foregoing modification of said contract, additional time will not be allowed."

The Board concluded and found that plaintiff had not proven its claim that its contract performance had been suspended, delayed or interrupted as a result of the flood damage and the necessary clean-up and repair operations, or that such matters had caused inefficiency in the performance of plaintiff's labor forces.

Before this court, plaintiff briefly reiterates its argument that defendant was at fault for rejecting the proposed storm sewer plan for the new residential area, but otherwise confines its com-

plaint to the general statement that the Board overlooked plaintiff's contention that the delays and interruptions had a very real and detrimental effect on contract performance.

The Board's decision on this claim must be held final for failure of plaintiff to specify before this court in what respect such decision was in error in the conclusion reached that there was a failure of proof concerning the alleged delays or interruptions of performance of contract work resulting from the flood problems. Certainly the Board was correct in holding that plaintiff had such burden of proof. From a careful review of the administrative record, it seems apparent that plaintiff failed to discharge such burden.

### IX. Damages.

In its brief to the court, plaintiff discusses the evidence concerning damages presented to the Board. Since the Board found that plaintiff was not entitled to recover on any of its claims, it made no findings on amounts of recovery, and did not discuss plaintiff's evidence on damages. In connection with further proceedings before the Board, as prescribed above, all relevant issues of damages must be presented to the Board for initial determination. United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966).

### CONCLUSION

Upon the basis of the foregoing opinion which is adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff's motion for summary judgment is granted as to plaintiff's claims for delays in contract performance resulting from defendant's defective contract drawings both with respect to the sewerline across the China Creek channel and also with respect to the D Street waterline across Locust Street, and that to that limited extent, defendant's cross-motion for summary judgment is denied, and that proceedings before this court are suspended for a period of 90 days to permit the parties to return to the Corps of Engineers Board of Contract Appeals for determination of remaining issues on such claims, in accordance with the foregoing opinion. With respect to all other claims, the court concludes that plaintiff's motion for summary judgment is denied, that defendant's cross-motion for summary judgment is granted, and that judgment is entered dismissing plaintiff's petition as to such claims.